**Vermont Real Estate Commission v. Burnham F. Martin**

[318 A.2d 670]

No. 79-73

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed April 2, 1974

310

*Kimberly B. Cheney*, Attorney General, and *James E. Hirsch*, Assistant Attorney General, for Plaintiff.

*Paterson, Gibson, Noble & Brownell*, Montpelier, for Defendant.

**Keyser, J.** The Real Estate Commission gave notice to the defendant of a hearing to consider the suspension or revocation of his license to practice as a real estate broker. The notice particularized the following charges:

1. Mr. Burnham F. Martin of Martin Associates, Inc. of Sherburne, Vermont received a deposit of $500.00 from lessees Richard B. Frey of Stow, Massachusetts, and James Buckmelter of Bedford, Massachusetts, with respect to the rental of real property in Rochester, Vermont. The lease agreement provided the deposit was to be delivered to the owner, Suzanne B. Alison of Rochester, Vermont, upon the expiration of the lease on April 30, 1972. Mr. Burnham F. Martin has refused to deliver such funds as per said lease agreement.

2. The deposit money as such has been converted to Mr. Burnham F. Martin's own use.

The Real Estate Commission is a licensing agency and as such it is subject to the provisions of the Administrative Procedure Act, 3 V.S.A. §§ 801–816, which governs its proceedings in this case.

■ An administrative agency hearing on a license suspension is subject to the essentials of due process. *Petition of Green Mountain Power,* 131 Vt. 284, 293, 305 A.2d 571 (1973). The essentials of due process are notice and the opportunity to be heard. *In re Petition of St. George,* 125 Vt. 408, 412, 217 A.2d 45 (1966). The rules of evidence generally apply in administrative hearings as provided by 3 V.S.A. § 810. This would include administration of an oath to any person testifying. It is specifically required that the right to full cross-examination be allowed. 3 V.S.A. § 810 (3).

■ At the outset of the hearing the commission's attorney said it would be conducted as informally as possible. The complainant, Mrs. Alison, was present with her attorney, but what little she said was not under oath. However, her attorney made numerous statements. The defendant answered questions and made statements under oath. He was not represented by counsel.

It was the duty of the commission to produce and use any available witness whose testimony would shed light upon and

support the two allegations in its complaint. Here, there were none, not even the complainant, Mrs. Alison, who was the defendant's client. What took place was nothing more than an interrogation, not a due process hearing.

The quasi-judicial action prescribed by the essentials of due process must faithfully observe the rudiments of fair play. A fair and open hearing is the absolute demand of all judicial inquiry. *Petition of N.E. Tel. & Tel. Co.*, 120 Vt. 181, 188, 136 A.2d 357 (1957); *State v. Crepeault*, 127 Vt. 465, 472, 252 A.2d 534 (1969).

The defendant was not accorded the hearing to which he was entitled. The commission and its attorney miscast the burden of proof upon the defendant. He was placed in the position of having to prove his innocence of the two charges laid against him. The defendant had no burden of proof on these issues until sufficient evidence was introduced to establish a *prima facie* case against him. See *State v. Jost*, 127 Vt. 120, 128–29, 241 A.2d 316 (1968). The commission erroneously adopted the procedure it did.

On the basis of the records, the evidence and its findings of fact, the commission found as a fact that defendant "has breached a fiduciary duty" which he owed to his client and that he has "demonstrated incompetency" as a licensed real estate broker. These are conclusions of law relative to the duty of a broker to his principal and to the requirements of 26 V.S.A. § 2295(a)(3), (8). They can stand only by a concise and explicit statement of the underlying facts supporting the findings. *In re Application of Hemco, Inc.*, 129 Vt. 534, 537, 283 A.2d 246 (1971).

Based on its findings, the commission ordered a license suspension of thirty days, whereupon defendant appealed to this Court. The appellant claims that the findings are not reasonably based on the record and that the decision and order of the commission is not supported by the facts found.

Despite what we have said concerning the procedure below, rather than remand the case for rehearing we will consider what the record establishes and dispose of the appeal.

The record shows the following facts. Mrs. Alison approached defendant in 1971, seeking to have him rent her ski

chalet in Rochester. He told her that he would list her property for rental, but only if she agreed to let him hold the security deposit. Martin told her "in a nice way that the damage deposit would be involved with us." This was at the time she asked him to rent her property. He proceeded to find a tenant on this basis. Martin presumed his standard office form of lease would be used but about closing time his client produced a home-made lease which she wanted used. The lease was executed August 14, 1971, effective for the term of December, 1971, to April 30, 1972. It provided that the lessee was "to pay $500. on the first day of occupancy to be held in escrow by owner, which will be returned provided the conditions of the lease are fulfilled and the premises left in the condition found."

The lease required the payment of $2800. rent "to the Lessor"—$800. on August 14, 1971, $1,000. on November 1, and $1,000. on December 1. The defendant collected all the payments on behalf of his client as her agent. He promptly accounted to and settled with her for every penny of such payments due her. The $500. damage deposit was included with the December 1 payment made to defendant. He retained it as he had told Mrs. Alison he would do. Sometime after the lease expired Mrs. Alison requested that the deposit be paid to her.

A dispute had arisen between Mrs. Alison and the lessee as to the damage deposit which apparently arose because of some damage to the properties claimed by Mrs. Alison. The lessee indicated to defendant that if such monies were given to Mrs. Alison he would hold him responsible. Because of this dispute the defendant did not pay the deposit to his client as she requested. However, he did offer in writing to place the deposit in a joint bank account in the names of Mrs. Alison and lessee Frey. This was not acceptable to her.

We first consider the charge that the defendant converted the $500. deposit to his own use. After being asked where the funds were at the present time, the defendant clearly established by his sworn statements and records that the money was deposited in his escrow bank account and always had been. As a consequence, this serious allegation was considered as being "no longer before the commission." However, it made

no finding in this respect or dismissed it as should have been done for lack of proof.

After the commission "dropped" the conversion of funds charge, its attorney said: "The Board would like to consider some other items of Mr. Martin's conduct." The defendant was asked by the commission's attorney what he had to say in defense of two other allegations. The first was a possible violation of the rules by failing to have a written leasing agreement with Mrs. Alison. The second was that he was suggesting a course of action contrary to the wishes of Mrs. Alison as to paying the damage deposit over to her. The burden of disproving them was erroneously cast on the defendant.

A complaint to be sufficient must fairly inform the defendant of the nature of the misconduct of which he is accused. See 26 V.S.A. § 2298(a) which requires notice of "any charges made." The notice must consist of a plain statement which will give the defendant due and proper notice of the basis of the charges against him. *In re Wright*, 131 Vt. 473, 310 A.2d 1, 8–9 (1973); *Aiken* v. *Malloy, Comm'r of Motor Vehicles*, 132 Vt. 200, 315 A.2d 488 (1974). Notice of a statutory section without more is insufficient. These misconduct allegations arose during the hearing. A plain statement of these matters as being in issue was not specified in the notice served on the defendant as it should have been. 3 V.S.A. § 809(4). The commission erroneously considered these other allegations as, when, and how it did. Even on the assumption it acted correctly, no affirmative evidence was produced to support this area of possible violation.

The conclusion of the commission that Mr. Martin "has breached a fiduciary duty which he owed Mrs. Alison" is apparently based on its finding that he held "the damage deposit of $500.00 contrary to the wishes of Mrs. Alison." The conclusion was reached without findings as to the nature of the relationship between the parties concerning the damage deposit as disclosed by Mr. Martin's testimony.

In addition to what defendant told the complainant relative to his holding the security deposit at the time she wanted him to rent her property, he stated: "At the time of the possession [December 1] when I delivered the $1,000.00 check to her we had an argument about the damage deposit. I was very

adamant. I said it will be escrowed with me or find Mr. Frey another place in which to stay. She had at this time accepted this as such." He also stated that he "would never have accepted the leasing if the owner was going to escrow a damage deposit and in the case of Mrs. Alison, because we had a previous problem of the same type in 1964." He had made this problem known to Mr. Frey.

The relationship of Mrs. Alison with her broker was that of principal and agent. The statements of Mr. Martin clearly established a valid understanding between these parties that the damage deposit was to be left with him in escrow as her agent. This agreement was made independent of the lease to which the defendant was not even a party.

The statement introduced no evidence to dispute defendant's statements. The failure of the state to have the complainant testify denied defendant an opportunity to effectively cross-examine her. He wished to ask her questions relative to his agreement with her but this was not accorded him.

The $500. deposit was the lessee's money which the lease required as security to cover the payment of any damage to the leased premises or failure to abide by the terms of the lease. The lessee owned the funds, not Mrs. Alison. It was only when the conditions of the escrow provision were violated and the dollar value of her damage ascertained that she was entitled to recover any part of the deposit. In effect, the broker was holding the funds in the interest of both parties. So, when the dispute arose as to the damage, Martin was properly holding the escrow fund until the disagreement as to any division of the deposit was settled by the parties. Moreover, there is no evidence whatever that Mrs. Alison was entitled to the entire deposit or any part of it. The offer of defendant in his letter of June 3, 1972, to place the deposit in a joint account of the lessor and lessee showed his good faith to the parties.

The conclusion that Martin violated his fiduciary duty to Mrs. Alison has no support in law, in the record, or legitimate findings and cannot stand. *Laird Properties* v. *Mad River Corp.*, 131 Vt. 268, 278, 305 A.2d 562 (1973).

The commission's conclusion that the defendant has "demonstrated incompetency" can stand only if it is supported by the

subordinate findings. Competence is required of licensed brokers, 26 V.S.A. § 2292(c), and a license may be suspended for lack of it, 26 V.S.A. § 2295(a)(3), (8). The term "incompetency" is not defined by a statute and thus is to be given its plain and commonly accepted meaning. In 42 C.J.S. at 539, with reference to a number of supporting decisions, it states that incompetency may be defined as "general lack of capacity of fitness, or lack of the special qualities required for a particular purpose"; "a lack of ability . . . or fitness to discharge the required duty." To the same effect, Black's Law Dictionary, at 906 (4th ed. 1957); *Barclay* v. *Wetmore & Morse Granite Co.*, 92 Vt. 195, 102 A. 493 (1917).

In *Griffin* v. *Boston & Maine R. R.*, 87 Vt. 278, 286, 89 A. 220 (1913), this Court said that incompetency embraces habitual carelessness, insufficient technical knowledge, physical inability to discharge the duties properly, or reckless disposition rendering the employee unfit to do the job.

Here, the relationship between Martin and Mrs. Alison was principal and agent relative to renting the property. This relationship was entirely independent of the lease or his employment to rent the property. From Martin's unrefuted testimony it clearly appears that Mrs. Alison on December 1, 1971, acquiesced in and, by her action consented to, the terms which Martin specified must prevail if he was to go forward with renting the property—namely, that he was to escrow the damage deposit for her. Both the lessor and lessee had full knowledge of the facts and also the reasons why Martin insisted on this position.

As a result this aspect of defendant's relationship with Mrs. Alison took on the status of an agreement. Martin handled the fund exactly as agreed. It was not until after the lease expired that Mrs. Alison requested that the deposit be paid to her. Then, due to the damage dispute, Martin was placed in an uncompromising position which could only be changed by the joint action of the parties.

The first item that the defendant was called upon to answer was that the deposit "was to be delivered to the owner . . . upon the expiration of the lease on April 30, 1972," and that the defendant "has refused to deliver such funds as per lease agreement." The commission found these as facts in its findings. These findings are contrary to and are not supported

by both the evidence and lease. In addition, the record establishes no reasonable basis for the findings concerning the reason why the defendant did not pay the deposit to Mrs. Alison. The only evidence given by the defendant was the fact of a dispute between the lessor and lessee after the lease expired relative to damage to the premises.

There is no evidence or legitimate findings to demonstrate that the defendant lacked the ability and fitness to discharge his required duty or the special qualities and experience necessary for a real estate broker.

The record of the proceeding fails to disclose any basis, factual or legal, of sustaining the conclusion either of a breach of fiduciary duty by the defendant or of incompetency to act as a licensed real estate broker.

*The decision and order of the Vermont Real Estate Commission is reversed and held for naught; the record of defendant's suspension as a licensed real estate broker is ordered struck by the Commission. To be certified.*