In re Application of Edward C. Buttolph and Barbara C.
Buttolph to Construct an Impoundment in
Middlebury, Vermont

[451 A.2d 1129]

No. 391-81

Present: Barney, C.J., Billings, Hill and Peck, JJ., and Larrow, J.
(Ret.), Specially Assigned

Opinion Filed September 7, 1982

*Lynch & Foley*, Middlebury, for Plaintiffs-Appellees.

*John J. Easton, Jr.*, Attorney General, and *John H. Chase*, Special Assistant Attorney General, Montpelier, for Appellee Water Resources Department.

*James H. Ouimette*, Vergennes, for Defendants-Appellants.

**Barney, C.J.** The Buttolphs are owner-developers of residential property in Middlebury. In order to secure town approval for expansion of an existing housing development on their property, they were required by the town planning commission to find a way to alleviate drainage problems in the area which, it was anticipated, would worsen with the construction of additional homes. They proposed to build an earthen dam and retention basin, an acceptable solution so far as the town was concerned, and pursuant to 10 V.S.A., Chapter 43, sought authorization to proceed with construction from the Vermont Water Resources Board.

A first hearing on the proposal was held in June of 1978. William A. Bartlett, executive secretary of the Board, acted as the hearing referee. His preliminary findings were issued in July, and were followed in August by the Board's own "Findings of Fact and Order." This document, signed by the Chairman and one of two other members of the Board, adopted the preliminary findings of the referee with some few amendments, only one of which is relevant here. That was the addition of a paragraph recognizing the concern of downstream property owners that the combined effect of the proposed impoundment and the diversion of drainage from the parcel of land to be developed would alter the flow characteristics of the tributary which abutted their property to such an extent as to adversely affect it. However, the Board went on to say that none of the experts who had testified at the hearing expected the flow characteristics to be altered sufficiently to

create an adverse effect on scenic or recreational property values.

But the Board declined to authorize construction of the impoundment by not issuing an order. Finding no plan for long-term maintenance of the proposed structure, the Board made approval contingent on the filing of an agreement between the town and the Buttolphs relative to that issue, noting that "upon receipt of an executed agreement the Board will issue an order" approving and authorizing the construction on conditions. Fourteen conditions not material to this case followed.

An agreement was subsequently submitted to the Board by the Buttolphs and the town indicating that the impoundment would be conveyed by the Buttolphs to the town after its construction, and that the town would thereafter provide for maintenance. An order authorizing construction on the fourteen other conditions then issued on March 10, 1979, signed by Executive Secretary Bartlett "FOR THE WATER RE-SOURCES BOARD."

Milton and Beatrice Barnes, owners of residential property downriver from the proposed impoundment, appealed that March 10 order to this Court. They alleged both procedural and substantive errors below, but did not challenge the validity of the order itself. On our determination that the Board had indeed not made all of the findings mandated by statute, see 10 V.S.A. § 1086, as the Barneses had claimed, we reversed and remanded the cause for a new hearing. See *In re Buttolph*, 138 Vt. 573, 420 A.2d 859 (1980).

The second hearing took place before Bartlett and the full Board on July 13, 1981. The result of that hearing was the same as the first, with construction of the impoundment approved and authorized in a document entitled "Findings of Fact, Conclusion of Law and Order" issued on July 21, 1981, signed by William A. Bartlett "By the authority of the Water Resources Board." Once again the Barneses appeal the Board's decision, and in this appeal their claims of error are six.

The Barneses now maintain: (1) that the document issued on July 21, 1981, was not valid as the findings or order of the Board because it was not signed by the Board members; (2) that the Board improperly limited cross-examination on the issue of change in flow; (3) that the Board failed to make findings of fact on each factor mandated by the statute; (4)

that those findings it did make were not supported by substantial evidence; (5) that the Board misapprehended the scope of its review; and (6) that the Board erred in failing to impose conditions on the project relating to flowage which would protect the downstream owners from adverse consequences. We consider these claims in the order raised.

The first error claimed by the appellants, the signing of the document "Findings, Conclusion and Order" by the Board's executive secretary, rather than by the Board members themselves, calls into question the statutory responsibilities of the Board and its power to delegate its authority to a subordinate. The appellants maintain that the Board itself is charged with making the determination of public good, 10 V.S.A. § 1085, making findings of fact, 10 V.S.A. § 1086, and issuing any order approving and authorizing the construction of a dam, 10 V.S.A. § 1090. They argue that the signing of the document by the executive secretary "By the authority of the Water Resources Board" indicates a delegation of duties and responsibilities not delegable by law. The State contends that absent any allegation that the executive secretary, and not the members, actually made the decision whether or not to issue the order, or determined what it should say, the signing is a mere ministerial act, legitimately delegated.

The issue, easily captured, is not as readily resolved. The three member Board, appointed by the Governor, derives its authority to act from the legislature. Its powers and duties are carefully spelled out at 10 V.S.A. § 905, and include, as to matters within its jurisdiction, the duties to "issue its findings" and "issue its order." 10 V.S.A. § 905(c)(4). Its jurisdiction unquestionably extends to the regulation of dams impounding more than 500,000 cubic feet of water in any stream or river in the state, 10 V.S.A. §§ 1081 and 1082, and it is expressly authorized, in the exercise of that jurisdiction, to employ persons "as may be necessary in the performance of its duties and exercise of its powers." 10 V.S.A. § 904.

■ This grant of authority to the Board to employ other persons "in the performance of its duties and exercise of its powers" is not without limitation, however. As a general rule, absent a statute or act expressly permitting it, a board cannot delegate powers and functions which are discretion-

ary or quasi-judicial in character, or which require the exercise of judgment. See 73 C.J.S. *Public Administrative Bodies and Procedure* § 57. Our own statute echoes the general rule:

> The administrative head of a department may delegate any authority, power or duty other than a specific statutory authority of the office to the subordinate officers of the department; and a board or council in its discretion and with the approval of the governor may delegate to the commissioner of the department any of its authority, power or duty other than a specific statutory authority except those necessary to its rule making and quasi-judicial functions.

3 V.S.A. § 214.

Thus, as the State points out in its brief, and giving the Board the benefit of the doubt as to whether its executive secretary stands in the same relationship to it as would a commissioner of a department, the question is whether the signing of the order in this case is a power or duty specifically delegated to the Board members themselves, or is a quasi-judicial function which cannot be subdelegated in any event. If either circumstance is the case, the Board had no power to subdelegate the signing of the order to its executive secretary, and the order itself is invalid.

As to the first question, we do not find a mandate "to issue," without more, to necessarily include the actual signing of documents. There may be situations where, under the statute, the authority "to issue" is properly subdelegated. And it is clear that where our legislature wants to specifically limit authority in this regard, it knows how to do so. See 10 V.S.A. § 4092 ("The chairman of the [fish and game] board shall sign and enter all regulations and orders in the records of the board.")

But where, as here, the authority to issue an order is part of a comprehensive scheme to vest in one body the power to find the facts of a matter, and determine the public good in relation to it, 10 V.S.A. § 1086, and to "make and issue its order" thereon, 10 V.S.A. § 1090, the process described is clearly quasi-judicial in nature and the signing of the order, coming within that process as it does, must remain the responsibility of the Board members themselves.

 Strong policy reasons support our decision that orders of administrative boards acting in their adjudicative role must be signed by the board members themselves. While we acknowledge that subdelegation is, in many instances, essential to the practical administration of government, and that its potential for abuse may be controlled by proper supervision and direction, see 1 K. Davis, Administrative Law § 9.01, at 616–18 (2d ed. 1967), we do not believe that the signing of orders falls into this category.

Typically the process of agency decision-making is institutional, rather than personal. Often even the parties don't know exactly how a given decision was made. In this case, the first time this matter was heard it was heard by the executive secretary alone, and he issued preliminary findings, which were then followed by Board findings. Then an order of the executive secretary issued "for the Board." On remand, the cause came before the entire Board *and* the executive secretary, sitting together at hearing, and resulted in a document comprising findings, conclusions and an order issued over the name of the executive secretary, "by the authority of" the Board.

> [T]he agency is one great obscure organization with which the citizen has to deal. It is absolutely amorphous. He pokes it in one place and it comes out another. No one seems to have specific authority . . . . [The case is heard] and then it goes into this great building and mills around and comes out with a commissioner's name on it but what happens in between is a mystery.

B. Schwartz, Administrative Law § 131, at 378 (1976) (quoting Dean Acheson, *Administrative Procedure: Hearings on S. 674, S. 675 and S. 918 Before a Subcomm. of the Senate Comm. on the Judiciary*, 77th Cong., 1st Sess. 816 (1941)).

 Decision by a known tribunal is vital to the belief that justice is being done. *Id.* at 378. Here, the order issuing in this matter provides the only available evidence we have whether or not the judgment and discretion prescribed by the legislature to be exercised by the Board was in fact so exercised. The signing of the document by the Board's executive secretary is not sufficient, for that function is so primary

and so basic to the implementation of the statute as to be nondelegable. See *Relco, Inc.* v. *Consumer Product Safety Commission*, 391 F. Supp. 841, 845 (S.D. Tex. 1975). The resulting order is therefore invalid and the matter must be remanded to the Board.

Our responsibility to the parties and to the Board cannot end there, however. Other issues raised by the appellants question the adequacy of the hearing itself and must be addressed. If any of them have merit, a new hearing must be held on remand. We therefore turn to consider the second issue raised by the Barneses on appeal, whether the Board improperly limited their cross-examination of the applicants and the applicants' engineer on the question of change in flow to be caused by the project.

The parties agree that under 10 V.S.A. § 1086 the Board is required to give due consideration to the effect of the proposed project upon the natural rate of flow of the water and the water quality in the stream in making its determination of public good. The issue is whether the Chairman's refusal to allow the appellants to cross-examine on the diversion of water to the impoundment and the effect of that process on their drainage basin and the tributary which borders their property comes within this mandate.

The appellants maintain that their questions were meant to probe for the cause of the existing drainage problems in the development in an effort to determine whether similar, additional drainage problems could be expected to arise in their drainage basin as a result of the diversion of water into the impoundment, and to ascertain what the resulting change in flow would be. The applicants, with whom the Chairman apparently agreed, claimed that these questions went beyond the bare issue of the construction of the impoundment and were properly limited.

■ We agree with the appellants that questions relating to drainage, and the diversion of water into the impoundment, were properly before the Board. The anticipated problem for which the town insisted that the applicants find a solution was the inability of the land, in its natural state, to handle increased drainage. The applicants proposed the construction of the impoundment. Its size and shape are to be

as they are here proposed because of the magnitude and nature of the anticipated run-off and drainage problems, and the impoundment's design, in turn, will determine the rate of discharge and undeniably affect the flow of the stream below it. These drainage problems, therefore, are properly before a tribunal charged with the responsibility of deciding if the impoundment's construction should be disapproved, approved as presented, or approved only with design modification, or under certain conditions. We are not disposed to limit cross-examination on matters so intimately connected with the ultimate issue to be decided. *In re Central Vermont Public Service Corp.*, 141 Vt. 284, 291–93, 449 A.2d 904, 908–09 (1982). See also 3 V.S.A. § 810(3); *Vermont Real Estate Commission* v. *Martin*, 132 Vt. 309, 312, 318 A.2d 670, 672 (1974).

In remanding this action for these reasons, we need not consider the appellants' remaining allegations specifically, but we remind the Board in passing of its duty to find on each factor mentioned in the statute, and to consider, if its findings indicate that harm will result from construction of the impoundment, though it nevertheless be required to be built, imposing such conditions relating to flowage below the dam as might be provident. 10 V.S.A. § 1086.

*Reversed and remanded for new hearing in accordance with the views expressed herein.*