## In re Vermont Marble Company

[648 A.2d 381]

No. 93-497

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 10, 1994

Motion for Reargument Denied July 13, 1994

356

*Jeffrey L. Amestoy,* Attorney General, and *Ron Shems,* Assistant Attorney General, Montpelier, for Appellant.

*Edward V. Schwiebert* of *Abell, Kenlan, Schwiebert & Hall, P.C.,* Rutland, for Appellee.

**Dooley, J.** This is the second of two appeals by the Vermont Agency of Natural Resources (ANR) in which the Agency contests decisions

invalidating delegations of duties by the ANR Secretary to the Commissioner of the Department of Environmental Conservation (DEC). See also *Secretary, Agency of Natural Resources v. Henry,* 161 Vt. 556, 641 A.2d 1345 (1994). In this case, ANR challenges a decision of the Water Resources Board vacating a water quality certificate issued by the DEC Commissioner to appellee OMYA (formerly known as Vermont Marble Company) because it was not signed by the ANR Secretary. We reverse and remand for review by the Board on the merits of the appeal.

The Vermont Marble Power Division of OMYA owns and operates a hydroelectric dam on the Otter Creek in Rutland. This dam, known formally as the Center Rutland Hydroelectric Project, has been in operation for nearly a century, and currently serves the industrial power needs of Vermont Marble, as well as the Town of Proctor and its residents. The Center Rutland Project was licensed by the Federal Power Commission, predecessor to the Federal Energy Regulatory Commission (FERC), in 1965. As this license was scheduled to expire on December 31, 1993, OMYA filed an application for a thirty-year renewal license with FERC in December 1991.

Any applicant for a federal license which discharges into navigable waters is required by § 401(a)(1) of the Clean Water Act, 33 U.S.C. § 1341(a)(1), to obtain state certification that the applicant's discharge complies with applicable provisions of the Clean Water Act.[1] By statute, the ANR is the designated certifying agency for purposes of § 401 of the Clean Water Act. See 10 V.S.A. § 1004. A certifying agency must act on an application within one year or it is deemed to have waived certification. See 33 U.S.C. § 1341(a)(1); 18 C.F.R. § 4.38(f)(7) (1993).

OMYA filed an application for a water quality certificate with the Water Quality Division of DEC on December 27, 1991. The DEC Commissioner issued OMYA a certificate on November 20, 1992, meeting the one-year deadline prescribed by federal law. Due to the inclusion in the certificate of several conditions with which it disagreed, OMYA appealed the certificate to the Water Resources Board on December 10, 1992. See 10 V.S.A. §§ 1004 (ANR Secretary's Clean Water Act certification appealable to Water Resources Board);

---

[1] OMYA has taken the position that the Center Rutland Project does not create a discharge into navigable waters, and thus, that the Project is not subject to the Clean Water Act. That issue is not before this Court, and we merely note OMYA's contention that application for a state water quality certification does not waive its position.

1024(a) (person aggrieved by decision of ANR Secretary under § 1004 or § 1023 may appeal to Board within fifteen days of notice of Secretary's action). Two months later, OMYA filed a petition for a declaratory ruling, seeking to have the Board pronounce the water quality certificate null and void on the ground that the DEC Commissioner was without authority to issue it.

In October 1993, the Water Resources Board granted OMYA's petition and vacated the water quality certificate. The Board determined that under Vermont law, a Clean Water Act certificate must be issued by the ANR Secretary and may not be issued by the DEC Commissioner, a subordinate ANR officer. Therefore, the Board declared OMYA's water quality certificate null and void. The Board also granted OMYA's motion to dismiss its appeal, ruling that there was no final appealable action from the ANR Secretary, and remanded the matter to ANR for further action consistent with the Board's opinion. ANR then brought the instant appeal.[2] In light of this action, FERC granted OMYA's request for stay of its relicensure pending the final outcome of this appeal. 65 FERC ¶ 61,376 (Dec. 22, 1993).

ANR has raised a number of procedural challenges to the Board's ruling. Because we agree with ANR that the water quality certificate, signed by the Commissioner, was valid, we do not reach these procedural challenges. Thus the question we address is whether the Secretary can subdelegate his statutory power to issue a water quality certificate to a subordinate commissioner within his agency.

Subdelegation is a term that "in the administrative law context has been defined as 'the transmission of authority from the heads of agencies to subordinates.'" *Society for the Protection of N.H. Forests v. Site Evaluation Comm.*, 337 A.2d 778, 784 (N.H. 1975) (quoting 1 K. Davis, Administrative Law Treatise § 9.01, at 616 (1958) (Supp. 1970, at 401)). The keys to subdelegation are that the ability to delegate be authorized, and that the delegating authority articulate clear standards under which the delegated authority is to be used. 1 C. Koch, Administrative Law and Practice § 1.22[5], at 16 (Supp. 1994). Our inquiry in this case focuses on the first key: whether the

---

[2] During the pendency of this appeal, OMYA moved to dismiss, arguing that the appeal should have been taken first to the superior court pursuant to 10 V.S.A. § 1024(b). We denied that motion, finding this to be a declaratory judgment proceeding governed by 3 V.S.A. § 815(a), and also denied OMYA's subsequent motion for reconsideration of our original denial decision. Since the issue has been resolved, we have not addressed it in this opinion.

ANR Secretary's ability to delegate water quality certificate issuance to the DEC Commissioner is authorized. This inquiry is primarily a matter of statutory interpretation. See *In re Advisory Opinion To Governor*, 627 A.2d 1246, 1248 (R.I. 1993) (agency action, including subdelegation of duties, valid only if agency "acts within the parameters of the statutes that define their powers"; therefore, validity of subdelegation primarily question of statutory interpretation).

The Board's holding centers on two statutes. The first is the general delegation of authority statute, 3 V.S.A. § 214, which states:

> A secretary, commissioner or director may delegate any authority, power or duty other than a specific statutory authority of the office to a designee; and a board or council in its discretion and with the approval of the governor may delegate to the commissioner of the department any of its authority, power or duty other than a specific statutory authority except those necessary to its rule making and quasi-judicial functions.

The second is the statutory provision applicable to the water quality certificate issued in this case. That statute, 10 V.S.A. § 1004, provides in part:

> The secretary shall be the agent to coordinate the state interest before the Federal Energy Regulatory Commission in all matters involving water quality and regulation or control of natural stream flow through the use of dams situated on streams within the boundaries of the state, and it shall advise the Federal Energy Regulatory Commission of the amount of flow considered necessary in each stream under consideration. The agency of natural resources shall be the certifying agency of the state for purposes of section 401 of the federal Clean Water Act and the secretary's determinations on these certifications shall be final action by the secretary appealable to the water resources board.

The statute was amended in 1987[3] to put it in part of its current form by substituting "secretary" for "department [of water resources and environmental engineering]" in the first sentence and "agency of

---

[3] There were actually two amendments, and this is the source of some confusion. The first transferred responsibility from the department level to the agency or secretary level as specified in the text. The second conformed the section to name changes in the agency and department. The agency went from the Agency of Environmental Conservation to the Agency of Natural Resources. The department went from the Department of Water Resources and Environmental Engineering to the Department of Environmental Conservation.

natural resources" for "department" in the second sentence. The term "secretary" is defined in § 1002(11) to mean the Secretary of the Agency of Natural Resources. It was also amended in 1991 to add the phrase on appeals at the end of the second sentence.

The Board concluded that the water quality certificate responsibility, as specified in § 1004, is a "specific statutory authority of the office" and, thus, cannot be subdelegated to anyone else under § 214. The Board also relied upon *In re Buttolph*, 141 Vt. 601, 604–05, 451 A.2d 1129, 1131 (1982), for the proposition that the Secretary could not subdelegate "discretionary or quasi-judicial duties" without specific statutory authority and found the issuance of the certificate required "the exercise of considerable discretion and judgment." The Board found policy reasons for this result in the "sensitive nature of federal/state relations."[4]

The issues before us are implicated in *Secretary, Agency of Natural Resources v. Henry*, but that case presented a clearer mandate for subdelegation because of statutory language allowing the Secretary's power to be exercised by a "duly authorized representative." 161 Vt. at 559, 641 A.2d at 1347. The issue before this Court was whether that authority was preempted by a later, and more limited, subdelegation authority. We held that it was not. *Id.* at 560, 641 A.2d at 1348.

Although *Henry* did not require us to rely upon *In re Buttolph*, we did quote language from that decision to the effect that discretionary or quasi-judicial duties or those requiring the exercise of judgment cannot be delegated absent a statute expressly authorizing such delegation. This case requires us to examine closely the *Buttolph* dicta. We find it overbroad and adopt a rule that is tailored to the underlying policies as detailed below.

In *Buttolph*, the Water Resources Board decided a contested case through a document entitled "Findings of Fact, Conclusion of Law and Order" signed by the Executive Secretary "By the authority of the Water Resources Board." We held that the issuance of the order was a "quasi-judicial" function that could not be subdelegated by the Board because of the prohibition of the second phrase of § 214. The language from *Buttolph*, which the Board relied upon and we quoted in *Henry*, is dicta that references 73 C.J.S. *Public Administrative*

---

[4] Section 1004 states that the Secretary's powers shall not infringe on those of the Public Service Board in this area. In support of its policy reasoning, the Board also noted "the sensitive relationship between the ANR and the Public Service Board."

*Bodies and Procedure* § 57. It is, however, an incomplete reference to the text, which goes on to state:

It has been observed that in the operation of any public administrative body, subdelegation of authority, impliedly or expressly, exists and must exist to some degree. Accordingly, it is recognized that express statutory authority is not necessarily required for the delegation of authority by an administrative agency, and the omission by the legislature of any specific grant of, or grounds for, the power to delegate is not to be construed as a denial of that power. So, if there is a reasonable basis to imply the power to delegate the authority of an administrative agency, such an implication may be made, and the power to delegate may be implied.

73 C.J.S. *Public Administrative Law and Procedure* § 56, at 514–15 (formerly 73 C.J.S. *Public Administrative Bodies and Procedure* § 57).

■ We believe this clarification of the general rule is more consistent with the first phrase of § 214, the applicable statutory language, which provides: "A secretary, commissioner or director may delegate any authority, power or duty other than a specific statutory authority of the office to a designee . . . ." 3 V.S.A. § 214. It is important to recognize that this language creates no special rule for "discretionary or quasi-judicial" functions. The Board's determination that subdelegation is prohibited whenever a power involves the exercise of discretion is not consistent with the language of § 214. Nor can we read the first phrase of the section as allowing subdelegation only when there is a specific statutory authorization for it; such a narrow construction deprives the phrase of any operative meaning. We do not need a general statute to tell us that specific statutory grant of power to subdelegate is valid.

■■ Thus, consistent with the general law in other jurisdictions, see, e.g., *Brown Group, Inc. v. Administrative Hearing Comm'n*, 649 S.W.2d 874, 878 (Mo. 1983); *Fulmer v. Jensen*, 379 N.W.2d 736, 739 (Neb. 1986), we are prepared to accept implied power to subdelegate specific authority when subdelegation power is needed and is, in the overall, consistent with legislative intent. We cannot, however, allow subdelegation of a "specific statutory authority of the office" as those terms are used in § 214. To determine whether a "specific statutory authority" is present requires a two-step inquiry: (1) Does the

legislation that creates the authority preclude delegation? (2) If not, can the power to subdelegate be implied from the statutory scheme and the circumstances involved?

■ The first step uses normal statutory construction tools to determine whether the Legislature has shown an intent to prohibit subdelegation of the specific power in question. OMYA argues that it has, primarily from two aspects of the statutory scheme. The first is that the Legislature in 1991 added to 10 V.S.A. § 1004 the phrase that ends the second sentence: "the secretary's determinations on these certifications shall be final action by the secretary appealable to the water resources board." 1991, No. 81, § 1. In OMYA's view, this sentence clearly specifies that issuance of the certification is a personal responsibility of the Secretary.

We do not read the legislative intent as broadly as OMYA suggests. The purpose of the amendment was to make certification decisions appealable to the Water Resources Board. See 1991, No. 81, title. There is no indication that a second purpose was to modify the subdelegation powers of the Secretary. Indeed, at the time of the 1991 amendment, the Secretary had subdelegated the signing of certificates to the Commissioner by regulation, and the Legislature was presumably aware of that action. If it intended to affect the preexisting practice, we believe it should have spoken more clearly.

OMYA's second argument for express prohibition is that the Legislature specifically provided the power of subdelegation for other responsibilities of the Secretary but withheld it here. We rejected this approach to determining legislative intent in *Henry*. See 161 Vt. at 559–60, 641 A.2d at 1347–48; see also *Hoardwood, Inc. v. Department of Pub. Aid*, 529 N.E.2d 1009, 1012 (Ill. Ct. App. 1988) (although preferable to have specific delegation authority, as in other statutes, presence of such authority is not required); *Commissioner of Revenue v. Demoulas Super Mkts., Inc.*, 588 N.E.2d 625, 627 (Mass. 1992) (absence of express statement of delegation authority not determinative, even though used elsewhere, absent express limitation on authority). We reject this approach again here. As discussed below, the Legislature's use of specific delegation authority for other responsibilities of the Secretary is relevant to whether we can find an implied power to delegate.

Thus, we turn to the second step of the inquiry, whether an implied power to subdelegate can be inferred in this instance. In making this determination, we must look to a number of factors that bear on the need to subdelegate and the intent of the Legislature as we best can

discern it. The most important factors are the function of the office and the nature of the delegated responsibility as related to that function.

In this case, the Legislature has spoken clearly on the role and responsibility of the Secretary of Natural Resources:

> The secretary shall be responsible to the governor and shall plan, coordinate and direct the functions vested in the agency. He shall prepare and submit to the governor an annual budget and shall prepare and submit to the governor and the general assembly in November of each year a report concerning the operation of the agency for the preceding fiscal year and the future goals and objectives of the agency.

3 V.S.A. § 2822(a). The "Secretary" is defined as "[t]he head of the agency, a member of the governor's cabinet and responsible to the governor for the administration of the agency." *Id.* § 2801(6).

In *Buttolph*, the primary function of the Water Resources Board was to issue findings, conclusions and orders in contested cases, yet the Board delegated that very function to its staff. See 141 Vt. at 604, 451 A.2d at 1131. By contrast, in this case, the primary roles and responsibilities of the Secretary are to plan, administer and manage functions of the agency; no part of those roles and responsibilities are involved in the delegation before us.

A second, important factor bearing on the propriety of subdelegation is the policy reason that supports or weighs against delegation. As part of this factor, we must look at the nature and degree of the need to delegate functions. For example, in *Buttolph*, there was no demonstrated need for the Board to delegate the power to sign decisions. It is hard to imagine the Board being overburdened by having to sign its decision.

In this case, we are dealing with a document in the nature of a permit. Requiring the Secretary to decide whether to issue specific permits, and what conditions to impose on those permits, "risk[s] overburdening the Secretary, making it more difficult to carry out the broad mandate assigned to the position." See *Henry*, 161 Vt. at 560, 641 A.2d at 1348. Other courts have emphasized the unreasonable burden placed on a high policy and administrative official when the official is required to make personal decisions about individual requests for agency action. See *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 122–23 (1947); *Fremont RE-1 School Dist. v. Jacobs*, 737 P.2d 816, 819 (Colo. 1987). We are reluctant to infer that the Legislature intended that burden.

In its decision, the Board concluded that the "sensitive nature of federal/state relations" in this area was a policy consideration that weighed against delegation. We see nothing in the statute from which we can infer that the Legislature intended to implement such a policy. Indeed, the opening sentence of 10 V.S.A. § 1004 defines the Secretary's role as one "to coordinate the state interest," a description consistent with the Secretary's overall responsibilities as ɔn administrator, but not generally consistent with the responsibility to personally make all necessary decisions. The subsequent statutory section authorizes the Secretary to contract out part of the state's responsibilities. See 10 V.S.A. § 1005(a). We do not find this authority consistent with a legislative policy of personal decisionmaking by the Secretary.

■ Moreover, § 1004 implements the 33 U.S.C. § 1341(a)(1) requirement of "a certification from the State . . . that any such discharge [into navigable waters] will comply with the applicable provisions of sections 1311, 1312, 1313, 1316, and 1317 of this title." State certification, therefore, involves testing water discharges against a set of federal standards. See 33 U.S.C. §§ 1311 (effluent limitations); 1312 (water quality related effluent limitations); 1313 (water quality standards and implementation plans); 1316 (national performance standards); 1317 (toxic and pretreatment effluent standards). Thus, § 1341(a)(1) certification is at heart a matter of water discharge testing for which "the agency of natural resources" is responsible. 10 V.S.A. § 1004. The logic of delegating § 1341(a)(1) compliance testing to the DEC is clear, for testing is an area of DEC expertise, and not an area requiring an exercise of judgment and discretion by the ANR Secretary. In fact, allowing subdelegation for the issuance of water quality certificates to the DEC Commissioner places certification in the hands of one charged with expertise to administer the state's water resources programs. See 3 V.S.A. § 2873(a) (DEC shall administer water resources programs of Title 10). Delegation to the DEC Commissioner is hardly inconsistent with the sensitive federal/state relations.

■ A third factor to consider is the Legislature's consistency in expressing its intent to allow delegation of an official's responsibilities. As shown in *Henry*, the Legislature has been far from consistent in expressing delegation authority for the Secretary of Natural Resources. There are instances in which delegation is obviously necessary, but the Legislature has failed to state so specifically. See,

e.g., 3 V.S.A. § 2822(g) (providing that the "secretary shall make all practical efforts to process permits in a prompt manner" when it is clear that actual processing of permits will be subdelegated within agency); 10 V.S.A. § 753(b) (obligation of "secretary" to provide each municipality with a designation of flood hazard areas within the municipality; no specific power to subdelegate stated). The major example in which delegation is necessary, but not specifically authorized, is probably found in chapter 41 of Title 10, which authorizes the certification involved in this case. 10 V.S.A. § 1021(a) prohibits any person from altering the "course, current or cross-section of any watercourse" without a permit from the Secretary. As with § 1004, no specific authority to subdelegate is stated. In each case, "a written report shall be made by the secretary concerning the effect of the proposed change on the watercourse." 10 V.S.A. § 1023(a). Requiring the Secretary to issue these permits and reports personally would be an oppressive burden that the Legislature could not have intended. Overall, we find that the lack of consistency in the Legislature's treatment of subdelegation authority supports implied authority to subdelegate here.

Yet another factor to consider is the identity of the person to whom authority is subdelegated. In *Buttolph*, the delegation was to a staff person unaccountable to anyone but the Board members who hired that person. See 141 Vt. at 604, 451 A.2d at 1131 (Board authorized to employ persons as necessary to performance of its duties). Here, the delegation was to the Commissioner of Environmental Conservation, an official who is appointed with the approval of the Governor and serves at the pleasure of the Secretary. 3 V.S.A. § 2851. The appointment of the Commissioner is subject to the advice and consent of the Senate. *Id.* § 256(b). As discussed above, the Commissioner already has primary responsibilities in this area.

A final important factor to consider is how the delegation is effected. In *Buttolph*, the delegation appeared to be ad hoc, with no formal authorization that described the nature and scope of the delegation. The delegation in this case, by contrast, was accomplished by administrative regulation. See Vermont Agency of Natural Resources, Environmental Protection Rules § 13.11 in 7 Code of Vermont Rules 12033002-34 (1994). As such, it is entitled to a presumption of validity. See *In re Club 107*, 152 Vt. 320, 323, 566 A.2d 966, 967 (1989). Moreover, the subdelegation is authored by the administrator of the statutory scheme, whose construction of that scheme is entitled to weight. See *In re Verburg*, 159 Vt. 161, 165, 616 A.2d 237, 239 (1992).

All these factors inform our decision concerning whether a reference to an official should be considered as creating a "specific statutory authority of the office" that cannot be subdelegated under 3 V.S.A. § 214. Each weighs against considering the Secretary's responsibilities under 10 V.S.A. § 1004 as a specific statutory authority of the office. Each supports a conclusion that the power to subdelegate can be implied from the statutory scheme and the circumstances involved.

Accordingly, we hold that there is a reasonable basis from which to infer authority for the Secretary to delegate the power to issue § 401 certifications to the Commissioner of Environmental Conservation. Therefore, the certificate issued to appellee OMYA was not void because it was signed by the Commissioner.

*Reversed and remanded.*