STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: JLD Properties - Wal Mart St. Albans | } | Docket No. 132-7-05 Vtec |
| (Appeal of Frey, et al.) | } | |
| | } | |

Decision and Order on Cross-Motions for Partial Summary Judgment

Appellants Marie Frey, Richard Hudak, and a group of forty-four individuals (the "Prent Group"), as well as Additional Appellants Commons Associates and R. L. Vallee, Inc., appealed from a decision of the Development Review Board (DRB) of the Town of St. Albans, granting conditional use and site plan approval to Appellee-Applicant JLD Properties, LLC,[1] for a proposed Wal-Mart store to be located at 424 Swanton Road (U.S. Route 7) in the Light Industrial/Commercial zoning district. Appellants are represented by Jon Groveman, Esq., and Jamey Fidel, Esq.; Appellee-Applicant is represented by Robert F. O'Neill, Esq., and Andrew Strauss, Esq. ; Additional Appellants Commons Associates and R. L. Vallee, Inc. are represented by Jon T. Anderson, Esq.; and the Town of St. Albans is represented by David A. Barra, Esq.

The parties had agreed that this municipal appeal, and the state stormwater appeal filed as Docket No. 129-5-06 Vtec, should await the conclusion of the Act 250 proceedings before being scheduled for trial, so that any appeal of the Act 250 decision could be combined with the already-filed appeals for further proceedings. V.R.E.C.P. 2(b). However, the parties also agreed that the partial summary judgment motions in the present case should be decided, as the decision could affect the procedural posture of the appeals.

_____

[1] In the pretrial conferences, the parties informed the Court that JLD Properties holds an option to purchase from the St. Albans Group and has an understanding to lease the property to Wal-Mart; however, neither entity is a party to this appeal.

1

The parties have moved for summary judgment on Questions 1, 2 and 3 of Appellants' Statement of Questions, addressing whether two DRB members had a conflict of interest disqualifying them from participating in the hearings or the decision on appeal, whether four other DRB members were also disqualified due to having missed some of the hearings on the application, and whether the DRB decision should therefore be vacated or is void.

The following facts are undisputed unless otherwise noted. The DRB consists of nine members. The DRB held seven warned public hearings on the application that is the subject of this appeal: on June 10, 2004; September 23, 2004; November 18, 2004; December 16, 2004; February 10, 2005; March 24, 2005; and May 26, 2005. The latter two dates occurred after the terms for some of the DRB members had concluded in early March of 2005, and other members had been selected for those positions.

Mr. Ernest Levesque, Jr., was a member of the DRB during the entire time that the DRB held hearings on and considered the application. He had also served as the Zoning Administrator for the Town of St. Albans in the 1990s. During some of the period between the end of his term as Zoning Administrator and his appointment to the DRB, he lived elsewhere and worked as Zoning Administrator for another municipality.

The parties do not dispute Mr. Levesque's deposition testimony that, while sitting as a DRB member conducting the September 23, 2004 public hearing, Mr. Levesque wore a hat bearing the words "ST. ALBANS TOWN[2] NEEDS WAL-MART." At that hearing he was asked to remove the hat by the chair of the DRB. Although he did remove it, Appellants allege, and no party disputes, that he placed it with the words outward in front

---

[2] This text is taken from Mr. Levesque's own response on page 5, line 25 of his deposition. It is referred to in other places as "St. Albans Needs Wal-Mart" or "St. Albans Needs a Wal-Mart."

of him on the hearing table where it could be seen by the hearing participants and by the television camera that was recording the proceedings. Appellants' attorney: Mr. Groveman, and the Town's attorney: Mr. Barra, were both present at that hearing. Appellant Frey and Mr. Groveman both spoke at that hearing, as reflected in the minutes.

The parties do not dispute Mr. Levesque's deposition testimony that he had received the hat in the 1990s, while serving as the St. Albans Zoning Administrator, as a gift from a Wal-Mart employee after a local permit proceeding. In the deposition, he stated that he wore the hat at the September 23, 2004 public hearing because "[i]n America I thought it was a free country so I wore the hat" and that "I thought in America you could wear anything you wanted on your head at any time because it's still a free country." In answer to a request that he further explain his interrogatory answer that he chose to wear the hat for its historical significance, he stated:

> Historical, historically because there's a gentleman named Sam Walton had nothing in his pocket and he built himself an empire. I say the American dream came true to him. That's the only reason I wore the hat. No other reason.

In addition, although not apparent to the public at that hearing, at some time before serving on the DRB, Mr. Levesque had telephoned Mr. Jeff Davis (the principal of Appellee-Applicant JLD Properties, LLC) to suggest that Wal-Mart first go into an existing retail space in St. Albans, so that it would have community support behind it when it would later apply for its original proposal, that is, the present application. Mr. Levesque's deposition testimony reflected that, at some later time, "Wal-Mart called me up and apologized and said we should have listened to you, Ernie, we would be in town now. I said well that's the way the ball bounces and the cookie crumbles and that's the end of it, and then I get appointed to the Development Review Board."

Mr. Albert J. Benson was a member of the DRB during the entire time that the DRB held hearings on and considered the application. The parties do not dispute Mr. Benson's

3

deposition testimony that he signed a petition for interested person status that was submitted to the DRB on November 18, 2004 (at the third of the seven public hearings on the DRB's consideration of the application). At the time, he believed it to be a petition "for Wal-Mart supporters." Also at that time, his personal opinion was that "we should have JLD Davis Enterprises." By letter to the Selectboard, Mr. Benson withdrew his signature from the petition the day after he had signed it, on advice of a Selectboard member. None of the materials submitted in support of the motions suggests that any members of the public saw the petition containing Mr. Benson's signature.

Four other DRB members (Mr. Guptill, Mr. Sanders, Mr. Martin, and Mr. Montagne) did not attend some of the evidentiary hearings on the application. However, a written record of the minutes of the hearings and the written materials submitted at the hearings was made available to them, and all of those members reviewed those written materials. In addition, two of the four watched some of the hearings when they were later televised on cable television.

Appellants argue that their constitutional due process right to a fair and open hearing before an impartial decisionmaker was violated so egregiously as to require this Court to conclude that the DRB decision is void or should be vacated, and to remand the matter for further proceedings before the DRB so that it can render a valid decision. Appellee-Applicant argues that what did or did not happen before the DRB is not relevant in a de novo appeal such as this one, and that the court is limited to a de novo consideration of the application.

It is true that procedural defects in reaching a DRB decision are generally disregarded in a de novo appeal, because the court must make its own determination as to the questions of law or fact raised in the appeal, and must "apply the substantive standards that were applicable before the tribunal appealed from." V.R.E.C.P. 5(g).

4

However, this Court equally has an obligation to protect the due process rights of persons appearing before municipal panels, as most decisions are not appealed and the system as a whole will only function if citizens can be confident that DRBs are held to the same standard of adherence to our society's basic constitutional principles as any other tribunal, that is, that DRB decisions are based on the rule of law.[3]

"A fair trial before an impartial decisionmaker is a basic requirement of due process, applicable to administrative agencies as well as to the courts." Secretary, Agency of Natural Resources v. Upper Valley Regional Landfill Corp., 167 Vt. 228, 234–35 (1997) (citing Withrow v. Larkin, 421 U.S. 35, 46 (1975)). Due process requirements are equally applicable to a municipal board[4] acting, as it did here, in a quasi-judicial capacity. See Chioffi v. Winooski Zoning Board, 151 Vt. 9, 13 (1989) (municipal boards perform a quasi-judicial function in determining the applicability of a zoning ordinance to the facts of the case).

Judicial and quasi-judicial proceedings must be conducted so as foster unbiased decisionmaking and "the avoidance of even the appearance of partiality." In re State

---

[3] See, Boddie v. Connecticut, 401 U.S. 371, 374 (1971): "Perhaps no characteristic of an organized and cohesive society is more fundamental than its erection and enforcement of a system of rules defining the various rights and duties of its members, enabling them to govern their affairs and definitively settle their differences in an orderly, predictable manner. Without such a 'legal system,' social organization and cohesion are virtually impossible; with the ability to seek regularized resolution of conflicts individuals are capable of interdependent action that enables them to strive for achievements without the anxieties that would beset them in a disorganized society."

[4] Requiring municipal citizen boards to adhere to the requirements of due process is particularly necessary to minimize the introduction of "irregular practices in a forum which suffers from an excess of informality." 4 K. Young, ANDERSON'S AMERICAN LAW OF ZONING §22.46 (4th ed. 1997 & Supp. 2006) (discussing voting by board members who did not attend hearings).

Highway No. 1, Peru, 133 Vt. 4, 9–10 (1974). That is, not only is it important that adjudicatory hearings actually be fair and impartial, they also must appear to be fair and impartial, both to participants and to observers. See Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 172, n.19 (1951) (Frankfurter, J., concurring) (quoting Daniel Webster: "In a government like ours, entirely popular, care should be taken in every part of the system, not only to do right, but to satisfy the community that right is done.")

Thus, an important purpose of holding public hearings in zoning and development matters is not only to obtain the necessary information for the board to make its decision, and not only for the board to make an unbiased decision, but also for the unbiased nature of the decisionmaking process to be apparent to everyone; that is, to ensure that justice is not only done, but manifestly seen to be done. The public hearings provide the board with the "formal mechanism to obtain the needed information in a manner that is fair to all stakeholders." In re Appeal of McEwing Services, 2004 VT 53, ¶17; 177 Vt. 38, 44 (2004).

As a member of the DRB conducting public hearings on the application at issue in this appeal, Mr. Levesque was acting in a quasi-judicial capacity. Mr. Levesque had a right to his privately-held opinion, but when he wore a hat with a pro-Wal-Mart inscription while sitting in an official quasi-judicial capacity to judge the merits of an application to site a Wal-Mart store, he destroyed the appearance of fairness that due process requires and to which the stakeholders at the hearing were entitled, whether or not he also departed from the reality of giving the application a fair hearing. See Vermont Real Estate Commission v. Martin, 132 Vt. 309, 312 (1974) (quasi-judicial action prescribed by the essentials of due process must faithfully observe the rudiments of fair play); Petition of New England Tel. & Tel. Co., 120 Vt. 181, 188 (1957) (fair and open hearing is the absolute demand of all judicial inquiry); and see Meyers v. Shields, 61 F. 713, 725 (C.C.Ohio 1894) (proceedings require an "impartial and wholly disinterested tribunal.")

It is precisely because this is "a free country" that Mr. Levesque should not have

6

worn the hat when sitting in an official quasi-judicial capacity; the core American values and guarantees set forth in our Constitution must be adhered to by all governmental representatives, however part-time and unpaid their service may be. These values include the "high social and moral values inherent in the procedural safeguard of a fair hearing," Anti-Fascist, 341 U.S. at 167, "perhaps the most majestic concept in our whole constitutional system." Id., at 174.

While sitting as a member of the DRB and deciding on the merits of the application, Mr. Levesque was required to set aside the actual hat that he was entitled to wear as a private citizen, and to put on instead the metaphorical 'hat' of a disinterested and impartial public decisionmaker. In failing to do so, he engaged in the "personal intermixing of roles that normally is a hallmark of a due process violation." In re Crushed Rock, Inc., 150 Vt. 613, 621 (1988). Similarly, Mr. Benson's action in signing a partisan petition while he was acting as a member of the DRB and deciding on the merits of the application detracted from the appearance of a fair hearing, albeit to a lesser extent as he withdrew the signature promptly and the public may not have seen it.

It is hard to avoid the conclusion that Mr. Levesque intended, by wearing the hat while sitting on the DRB at the hearing, to indicate to the participants his prejudgment of the merits of the application. But whether that was his intent or not, his actions gave the appearance of prejudgment and contravened the constitutional standard of a fair trial before an impartial decision maker. His act of disrespect for the integrity of the DRB proceedings, whether or not intended as such, gave both the stakeholders and observers good reason to doubt that the proceedings were being conducted by the required impartial and wholly disinterested tribunal. That reasonable doubt in the fairness of the hearing contaminated both that day of hearing and the further proceedings in which Mr. Levesque participated.

It is not enough to say that this Court, sitting de novo, can now judge the application

impartially, and thereby remove the stain of apparent bias from the result below. The public's expectation of an orderly, predictable, and fair system for the settlement of disputes, as opposed to a system based upon "the will of strategically placed individuals," Boddie v. Connecticut, 401 U.S. 371, 375 (1971), is damaged by that appearance of bias in the municipal proceedings. The government on every level "must turn square corners . . . when dealing with its citizens." In re McDonald's Corp., 146 Vt. 380, 385 (1985) (internal quotation and citation omitted). It is the responsibility of the tribunal in which the apparent bias occurs to remedy the constitutional violation in the first instance, by addressing the board member's potential disqualification and conducting the remainder of the hearing with a properly-constituted board.

However, although it was the DRB chair who apparently asked for Mr. Levesque to remove the hat, none of the parties or their attorneys requested his disqualification at the time of the event. Neither the Town's attorney, who was present at that hearing, nor Attorney Groveman or Ms. Frey, who both spoke at that hearing, raised the hat incident as a disqualifying issue. There is no question that at least Mr. Levesque, and possibly also Mr. Benson, should have been disqualified, but it is not fair to the applicant or the Town to do so retroactively two years later. We do not wish to waste the public funds and time spent at the five public DRB hearings and the DRB deliberations, over the course of ten months, that occurred after this incident. V.R.E.C.P. 1. Accordingly, under the circumstances of the present appeal the DRB decision will not be vacated and remanded; instead, the Court will proceed with the de novo appeal. However, if the DRB has not already taken measures to make certain that a similar problem would not arise in the future, the Court urges it to do so as soon as possible, and notes that Mr. Levesque and Mr. Benson should not participate in any future hearings or decisions related to this project.

Appellants also argue that this Court should also vacate the decision below or declare it be void because four other DRB members (Mssrs. Guptill, Sanders, Martin, and

8

Montagne) should be disqualified for having voted on the decision without having attended all of the public hearings on the application. However, a written record of the minutes of the hearings and the written materials submitted at the hearings was made available to them, and all of those members reviewed those written materials. In addition, two of the new members watched some of the hearings on cable television. A quorum of board members was present at each of the hearings, and the whole tribunal carefully reviewed the record prior to rendering the decision. The participation of those four members was sufficient under Vermont law in order to comply with due process. Lewandoski v. Vermont State Colleges, 142 Vt. 446, 452–53 (1983). Those four members were not disqualified from participating in the DRB decision that is the subject of this appeal, and of course may participate in any future hearings and decisions related to the project.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion for Partial Summary Judgment is DENIED, with the recommendation that the Town institute procedures so as to ensure the procedural safeguard of future DRB hearings that are both fair and are seen to be fair. We will hold a telephone conference on September 19, 2006, as already scheduled, to discuss further pretrial proceedings in these related cases and the related Act 250 proceedings.

Done at Berlin, Vermont, this 5th day of September, 2006.

_____
Merideth Wright
Environmental Judge