The STATE of Ohio, Appellant,

v.

COOPER, Appellee.

[Cite as *State v. Cooper* (1997), 120 Ohio App.3d 284.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APC09–1154.

Decided May 20, 1997.

*Janet Jackson,* City Attorney, *Stephen L. McIntosh,* City Prosecutor, and *Brenda J. Keltner,* Assistant City Prosecutor, for appellant.

*Michael J. Holbrook,* for appellee.

---

LAZARUS, Judge.

Plaintiff-appellant, the state of Ohio, appeals from entries of the Franklin County Municipal Court excluding from evidence the results of a breath test

administered to defendant-appellee, Craig S. Cooper, and dismissing the OMVI *per se* charge against him. The state asserts one assignment of error:

"The trial court erred in finding that the approval of the relevant calibration solution was so flawed that it was ineffective to demonstrate substantial compliance with Ohio Administrative Code 3701–53–04."

Because the trial court abused its discretion in excluding the results of the breath test, we reverse.

Ohio Adm.Code 3701–53–04(A), a rule of the Ohio Department of Health ("ODH"), provides:

"Approved evidential breath testing instruments shall be checked for calibration no less frequently than once every seven days by a senior operator using *a solution of ethyl alcohol approved by the director of health * * *.*" (Emphasis added.)

This appeal involves only one, narrow issue: whether ODH's customary practice prior to February 1996 of delegating to a designated ODH employee the authority to approve calibration solutions of ethyl alcohol was a permissible means of effecting the approval of the Director of Health as required by Ohio Adm.Code 3701–53–04(A). We conclude that it was.

On the morning of January 27, 1996, appellee, Craig S. Cooper, submitted to a breath test administered by the New Rome Police Department, which determined that he had an alcohol concentration of .184 grams per two hundred ten liters of breath. The breath-testing instrument[1] had been calibrated using bottle 331 from batch 95080.[2] Appellee was cited for operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1), operating a motor vehicle with a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of breath in violation of R.C. 4511.19(A)(3) ("OMVI *per se* "), and excessive speed (fifty-eight miles per hour in a thirty-five-mile-per-hour zone) in violation of R.C. 4511.21(C). Appellee pled not guilty to the charges and filed a motion to suppress the results of the breath test.

---

1. The trial court's decision inconsistently refers to the breath-testing instrument as a BAC Verifier and as a Breathalyzer. Appellee refers to it as a "breathalizer." The state's memorandum in opposition to appellee's motion to suppress asserts that the instrument was a "B.A.C. Datamaster." Ohio Adm.Code 3701–53–02(A) lists Breathalyzer models 900 and 900A, the BAC Verifier, and the National Patent BAC DataMaster as approved evidential breath-testing instruments.

2. The record is unclear as to who the manufacturer of batch 95080 is. The state's response to the court's pretrial order referred to the batch as "BAC batch # 95080." The state's appellate brief refers to the batch as "Guth Labs Batch no. 95080." The ODH certificate of approval refers only to "BATCH OR LOT No. 95080."

After an oral hearing, the court on July 5, 1996, issued a pretrial order stating:

"Unless there are any specific issues unique to this case, which shall be identified by July 12, 1996, this case shall be submitted to the court for a ruling regarding the admissibility of the test base[d] on the calibration procedure issue which is pending before Judge Taylor in *City of Columbus v. Workman.* The parties may submit copies of the entire transcript of the *Workman* case, or such portions as they mutually agree for this court to consider."

The case referred to in the pretrial order is *State v. Workman* (1996), 79 Ohio Misc.2d 26, 670 N.E.2d 315, which was decided July 11, 1996. Although the court in *Workman* heard ten days of testimony regarding the approval process for calibration solutions, *id.* at 29, 670 N.E.2d at 317, the record in this case contains only two transcript volumes totaling one hundred forty-four pages.[3] On August 28, 1996, the trial court issued its decision suppressing the test results and an entry dismissing the OMVI *per se* charge. After the state appealed that decision, the trial court stayed proceedings on the other two charges by agreement of the parties.

In *Workman,* the Franklin County Municipal Court suppressed the results of a breath test on the ground that ODH abused its discretion in approving the calibration solution that was used to calibrate the breath-testing instrument used with Vincent Workman, RepCo. Marketing, Inc. batch 93002. The court's decision was based on its finding that "the decision to approve batch 93002 was based on false or erroneous information." *Id.* at 44, 670 N.E.2d at 327.

The court in *Workman* rejected the argument made by appellee Cooper in this case: that the results of the breath test should be excluded based solely on ODH's procedure for approving calibration solutions. *Id.* at 37–38, 670 N.E.2d at 322–323. The court held:

"[T]he Director of Health may delegate statutory responsibility to personnel under his control. * * * [T]he approval issued by Porter and a photocopy of Dr. Somani's signature on the certificate was in technical compliance with the law and the regulations." *Id.* at 38, 670 N.E.2d at 323.

Unlike Workman, appellee does not attack the integrity of the particular batch of calibration solution or suggest that ODH should not have approved it. Nor does appellee attack the scientific protocol for testing the calibration solution,

---

**3.** The pretrial order set a July 31, 1996 deadline for filing the transcript. The two volumes are date-stamped October 11, 1996 by the municipal court clerk. The trial court's decision nevertheless suggests that the court had access to some portion of the *Workman* transcript. Because neither party has raised a question regarding the state of the record, and because the trial court's decision suggests that the court had access to the two transcript volumes, we presume that the volumes were properly filed in the trial court.

allege lack of compliance with that protocol, or allege that he was prejudiced by ODH's approval of batch 95080. Instead, appellee attacks ODH's procedure of delegating to an ODH employee the authority to approve a batch of calibration solution.

Until his retirement in February 1996, Leonard Porter was chief of the biochemistry section of ODH's Division of Public Health Laboratories. His job duties included administration of the rules of the Director of Health regarding chemical testing for intoxication. Porter testified as follows regarding how ODH approved batches of calibration solution. Manufacturers sell batches of calibration solution to law enforcement entities, which send the batches to ODH's laboratory for analysis and approval. The manufacturers provide a certificate of content analysis. ODH's gas chromatography test was designed not to independently determine the content of the calibration solution but to verify the manufacturer's claim as to the solution's content. ODH analysts notified Porter of test results by way of a summary sheet signed by the analyst and reviewed by the quality assurance officer and the section chief before finally being reviewed by Porter. If a batch was approved, ODH created a calibration solution certificate of approval, a copy of which was sent to the manufacturer for distribution with bottles from that batch.

In the early years, the Director of Health had a preprinted signature on the certificate, and Porter would individually cosign each certificate. At some point, it was deemed appropriate that only the director's preprinted signature would appear. The certificate that the director signed is referred to as a "master blank," and each certificate of approval was a photocopy of the master blank, with batch-specific information typed in the blank spaces. The master blank was kept in the office of Porter's secretary, Beverlye Adams. Previously, the master blank was maintained by Porter's administrative assistant, Timothy McClung. If a batch was approved, Porter would instruct his secretary to fill in the blanks on the certificate. Porter would sign the certificate only if it required his signature. About twenty years ago, the then director specifically delegated to Porter the authority to approve the calibration solutions.

Beverlye Adams, secretary for ODH's Bureau of Public Health Laboratories, testified to the following. She assumed her duties regarding the calibration solution certificates of approval in 1994 after Tim McClung resigned. When Adams assumed these duties, she received many photocopies of a master blank. Photocopies of the master blank were kept in a forms file. When Porter approved a batch, he would give Adams the paperwork from the laboratory and from the manufacturer. Porter would write "Okay" and his initials on the laboratory analysis. Adams would fill in the batch number, the solution content, the expected instrument reading, and the date of approval by typing them onto

the certificate. Adams would file the completed certificate and mail a photocopy to the manufacturer.

The Director of Health is the chief executive officer of ODH. R.C. 3701.02, 3701.03. The Director of Health must be either a licensed doctor of medicine or an "individual who has had significant experience in the public health profession." R.C. 121.10. Dr. Peter Somani, Director of Health from 1992, testified that because the authority to approve calibration solutions had been delegated to Porter by one of Somani's predecessors and Somani continued that delegation, Porter's approval constitutes approval by the Director of Health. Somani testified that he would be unable to perform the tests himself. Somani also testified that when he became Director of Health, he asked ODH's Dr. Tom Halpin, who oversaw operation of the ODH laboratory, to see whether the program was working all right. He further asked Halpin whether lab operations were running smoothly, whether there were any areas of concern, and whether any changes were necessary. Dr. Halpin assured him that there was no need for changes with regard to the certification of the calibration solutions. Somani saw no reason to suspect that he should personally look at each batch of calibration solution.

ODH's approval process became subject to formal and different procedures after February 1996, but at the time batch 95080 was approved, the director had not formally adopted any written procedure for the approval of calibration solutions.

R.C. 4511.19(D)(1) provides that breath "shall be analyzed in accordance with methods approved by the director of health." R.C. 3701.143 provides:

"For purposes of section 4511.19 of the Revised Code, the Director of Health shall determine, or cause to be determined, techniques or methods for chemically analyzing a person's blood, urine, breath, or other bodily substance in order to ascertain the amount of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, urine, breath, or other bodily substance."

In *Cincinnati v. Sand* (1975), 43 Ohio St.2d 79, 72 O.O.2d 44, 330 N.E.2d 908, paragraph two of the syllabus, modified by *State v. French* (1995), 72 Ohio St.3d 446, 650 N.E.2d 887, paragraph one of the syllabus, the Supreme Court of Ohio held that the results of a breath test may be admitted into evidence only upon the affirmative establishment of facts supporting the condition that the breath was analyzed in accordance with methods approved by the Director of Health. In *French,* the court moderated that absolute rule by holding that a defendant who does not challenge the admissibility of chemical test results through a pretrial motion to suppress waives the requirement that the state lay a foundation for the admissibility of the test results at trial by demonstrating that the bodily substance was analyzed in accordance with methods approved by the Director of

Health. The state must show substantial compliance, rather than strict compliance, with ODH regulations. *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32, 34.

Arguably among these "methods approved by the Director of Health" for breath testing is the requirement contained in Ohio Adm.Code 3701–53–04(A) that the alcohol solution used to calibrate the breath-testing instrument be approved by the Director of Health:

"Approved evidential breath testing instruments shall be checked for calibration no less frequently than once every seven days by a senior operator using *a solution of ethyl alcohol approved by the Director of Health * * *.*" (Emphasis added.) Ohio Adm. Code 3701-53-04(A).

Appellee's motion to suppress argued that under ODH's pre–1996 procedure, in which Porter, but not the Director of Health personally, approved calibration solutions, the solutions were not "approved by the Director of Health" as required by Ohio Adm.Code 3701–53–04(A). Appellee argues that because the pre–1996 calibration solutions, including batch 95080, were not "approved," the state cannot show that breath tests were conducted "in accordance with methods approved by the Director of Health" as required by *Sand, French,* and *Defiance, supra.* The trial court agreed.

 When interpreting statutes, courts must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise and to which the General Assembly has delegated the responsibility of implementing the legislative command. *Swallow v. Indus. Comm.* (1988), 36 Ohio St.3d 55, 57, 521 N.E.2d 778, 779–780. Courts should give considerable deference to an agency's interpretation of rules the agency is required to administer and to its own rules and regulations. *State ex rel. Celebrezze v. Natl. Lime & Stone Co.* (1994), 68 Ohio St.3d 377, 382, 627 N.E.2d 538, 542; *State ex rel. Kroger Co. v. Stover* (1987), 31 Ohio St.3d 229, 235, 31 OBR 436, 441, 510 N.E.2d 356, 361–362. In this case, the Director of Health, Dr. Peter Somani, testified that the responsibility for approving calibration solutions had been delegated to specific ODH employees. ODH thus interprets "approved by the Director of Health" in Ohio Adm.Code 3701–53–04(A) as meaning "approved by the Director of Health or the Director's delegatee." Given the varied responsibilities of the Director of Health and the common understanding that the heads of administrative agencies will of necessity delegate certain of those responsibilities, this interpretation is reasonable. R.C. 4511.19(D)(1) and 3701.143 constitute a broad grant of authority by the General Assembly to the Director of Health to approve methods for breath testing. We see nothing in these statutes or in Ohio Adm.Code 3701–53–04(A) suggesting that the Director

of Health cannot delegate to ODH employees the self-imposed duty to approve calibration solutions.

Because the evidence establishes that the ODH certificates of approval were "approved by the Director of Health" within the meaning of Ohio Adm.Code 3701–53–04(A), the state has proven strict compliance with Ohio Adm.Code 3701–53–04(A). The trial court abused its discretion in suppressing the results of appellee's breath test.

The trial court agreed with appellee that ODH's pre–1996 approval procedure constituted an improper delegation by the Director of Health of the duty to approve calibration solutions. Both appellee and the trial court concede that the director is not required to personally test and approve calibration solutions. Instead, the trial court held that "the Director's 'approval' practices have tainted the Defendant's BAC Verifier test results." The court wrote:

"The power of the Director of Health to delegate aspects of the approval process is implied from the practical necessity of the circumstances, but the manner in which the director has delegated these tasks is unacceptable to this court. * * * [T]he director has only two choices: either establish a procedure and delegate the authority or perform the certification himself. * * *

" * * * Simply stating that responsibility was delegated to Dr. Halpin with nothing more does not constitute proper delegation."

The court found two improprieties in the delegation: that the director did not issue "specific guidelines and procedures" for approving calibration solutions and that those guidelines and procedures did not require the director to personally ratify the ODH decision to approve a calibration solution.

The trial court relied on *Bell v. Lawrence Cty. Gen. Hosp. Bd. of Trustees* (1973), 34 Ohio St.2d 70, 63 O.O.2d 115, 296 N.E.2d 276, for both the proposition that the director did not issue "specific guidelines and procedures" for approval and the proposition that those guidelines and procedures must require the director to personally ratify the ODH decision to approve a calibration solution batch. In *Bell*, the Supreme Court of Ohio held that the board of trustees of a hospital was permitted to designate hearing officers to conduct hearings required by former R.C. 4117.04. The court recognized the necessity of delegating administrative authority:

"In the operation of any public administrative body, subdelegation of authority, impliedly or expressly, exists—and must exist to some degree. The real issue for decision is at what point delegation must stop and the board itself must act. * * *

" * * * *

"When the General Assembly enacts a law to accomplish some purpose it either gives express power to carry out that purpose, or the power is implied from the practical necessity of the situation." *Id.* at 74–75, 63 O.O.2d at 117–118, 296 N.E.2d at 278–279.

The court held that the General Assembly had not spoken directly on the hearing procedure required under former R.C. 4117.04 but that the subdelegation of authority to hearing examiners was within the board's implied authority. *Id.* at 75–76, 63 O.O.2d at 118–119, 296 N.E.2d at 279–280.

This case is different from *Bell* and most cases in which delegation of authority by an agency director has been challenged. In *Bell* and most other cases, the legislature had delegated to the director of the administrative agency some authority or duty, and the issue was whether that authority or duty could be subdelegated. In this case, however, the General Assembly has not specifically delegated to the Director of Health the authority or duty to approve calibration solutions. The General Assembly imposed only the duty to "determine, or cause to be determined, techniques or methods for chemically analyzing a person's blood, urine, breath, or other bodily substance." R.C. 3701.143; accord R.C. 4511.19(D)(1). The General Assembly has not mandated that ODH approve calibration solutions; it is the Director of Health through the promulgation of Ohio Adm.Code 3701–53–04(A) that requires that calibration solutions be approved. Thus, this case does not present an issue of subdelegation of a duty as that term is used in administrative law. For this reason alone, *Bell* is inapplicable to this case.

Even had this case been made more difficult by the existence of a specific mandate by the General Assembly to the Director of Health to approve calibration solutions—that is, even if this had been a true case of subdelegation—case law would support the conclusion that the subdelegation of that duty would have been valid.

Because it is a statutory creation, the Department of Health has only the authority conferred on it by the General Assembly. See *In re Miller* (1984), 20 Ohio App.3d 346, 347, 20 OBR 450, 450–452, 486 N.E.2d 217, 218–219; *State ex rel. Cincinnati v. Ohio Civ. Rights Comm.* (1981), 2 Ohio App.3d 287, 288, 2 OBR 317, 318–319, 441 N.E.2d 829, 831–832. Therefore, the issue of the validity of subdelegation of power by an administrative agency is primarily a question of statutory interpretation: whether the subdelegation of power by the agency director is consistent with the legislative grant of authority to the director. See *In re Vermont Marble Co.* (1994), 162 Vt. 355, 358–359, 362, 648 A.2d 381, 383, 385; *In re Advisory Opinion to Governor* (R.I.1993), 627 A.2d 1246, 1248; *Brown Group, Inc. v. Adm. Hearing Comm.* (Mo.1983), 649 S.W.2d 874, 878; *United*

*States v. Giordano* (1974), 416 U.S. 505, 512–523, 94 S.Ct. 1820, 1825–1830, 40 L.Ed.2d 341, 351–358.

 "A power of a state agency may be fairly implied from an express power where it is reasonably related to the duties of the agency." *Waliga v. Bd. of Trustees of Kent State Univ.* (1986), 22 Ohio St.3d 55, 57, 22 OBR 74, 76, 488 N.E.2d 850, 852. In the following cases, courts held that the power of an agency to subdelegate authority was implied by statute.

In *Fleming v. Mohawk Wrecking & Lumber Co.* (1947), 331 U.S. 111, 119–123, 67 S.Ct. 1129, 1133–1135, 91 L.Ed. 1375, 1383–1386, a unanimous United States Supreme Court held that the administrator of the Office of Price Administration had implied authority to subdelegate the power to issue subpoenas under the Emergency Price Control Act to the administration's regional administrators and district directors. The court relied on the following provision of the Act: "'The Administrator may, from time to time, issue such regulations and orders as he may deem necessary or proper in order to carry out the purposes and provisions of this Act.'" *Id.* at 121, 67 S.Ct. at 1134, 91 L.Ed. at 1385. The court commented:

"Such a rule-making power may itself be an adequate source of authority to delegate a particular function, unless by express provision of the Act or by implication it has been withheld. * * * There is no provision in the present Act negativing the existence of such authority, so far as the subpoena power is concerned. Nor can the absence of such authority be fairly inferred from the history and content of the Act." *Id.* at 121–122, 67 S.Ct. at 1134, 91 L.Ed. at 1385.

Similarly, subdelegation of the duty to approve calibration solutions would be implicitly authorized by the broad grant of authority of R.C. 4511.19(D)(1) and R.C. 3701.143. We have not been directed to any provision of the Revised Code that expressly or by implication suggests that such authority has been withheld by the General Assembly.

 *Bell* does not create a requirement that subdelegation of administrative authority be accompanied by "specific guidelines and procedures." We follow the view expressed by the court in *St. Louis Country Club v. Adm. Hearing Comm. of Missouri* (Mo.1983), 657 S.W.2d 614, 616, which rejected such a requirement:

"It is entirely in order for the Director [of Revenue] to authorize subordinates to authenticate assessments made in accordance with established office procedures. Nor is there any requirement that notice of the delegation to a particular employee be filed or published, or that internal procedures be formalized by rule."

The trial court also relied on *Bell* for the proposition that the Director of Health's subdelegation of approval authority was deficient because the director did not make the final decision of approving or rejecting calibration solutions. In *Bell*, the Ohio Supreme Court suggested that the hospital board's subdelegation of authority to conduct an administrative hearing was valid because the board "retained the power to adopt or reject, in whole or in part, the findings of the hearing officers and made the final decision on termination of employment." *Bell, supra*, 34 Ohio St.2d at 76, 63 O.O.2d at 119, 296 N.E.2d at 279.

■ Because the exercise of judicial authority calls for a great degree of discretion, whether it be the judicial authority vested in the judiciary or that vested in an administrative agency, the law disfavors its complete subdelegation. Thus, although Civ.R. 53 allows for the appointment of magistrates to take evidence and recommend decisions, courts may not defer to the findings or conclusions of magistrates but must exercise independent judgment. *Normandy Place Assoc. v. Beyer* (1982), 2 Ohio St.3d 102, 105, 2 OBR 653, 655–656, 443 N.E.2d 161, 163–164; *DeSantis v. Soller* (1990), 70 Ohio App.3d 226, 232–233, 590 N.E.2d 886, 890–891. Similarly, the General Assembly has given administrative agencies express authority to appoint a hearing examiner having "the same powers and authority in conducting the hearing as is granted to the agency," subject to final approval by the agency. R.C. 119.09, paragraph nine.

The nature of executive authority, however, is such that the law allows for broad subdelegation without the necessity of independent review by the person or board from which the authority derives. Nearly every employee of an administrative agency exercises such authority every day. For example, the signature of the Director of Health is not necessary to constitute an action by ODH. See *Cincinnati Ambulatory Surgery Ctr. v. Ohio Certificate of Need Review Bd.* (1988), 62 Ohio App.3d 1, 6, 574 N.E.2d 529, 532 (holding that a letter constituted a "final decision" for the purpose of appealing issuance of a certificate of need despite the fact that the letter was not signed by the Director of Health). This court noted the distinction between subdelegation of executive and judicial administrative authority in *Waspe v. Ohio State Dental Bd.* (1985), 27 Ohio App.3d 13, 27 OBR 14, 499 N.E.2d 337. In *Waspe*, the plaintiff dentists attacked the power of the state dental board to subdelegate its investigatory authority, based on R.C. 4715.03(D), which provides that "[t]he board shall investigate evidence which appears to show that any person has violated any provision of this chapter." This court held that such subdelegation was appropriate:

"It is ludicrous to suggest that the board must traverse the state, dealing with every matter involving an investigation, without being able to delegate any such power to employees. Although it must (and here does) retain final adjudicatory authority, common sense dictates, and R.C. 4715.04 authorizes, that the board

delegate investigatory and enforcement authority." *Id.* at 15–16, 27 OBR at 16, 499 N.E.2d at 339–340.

*Bell* and *Waspe* may stand for the proposition that an agency generally cannot subdelegate the power to exercise final judicial authority. This proposition is inapplicable to the subdelegation of a duty executive in nature that requires the exercise of relatively little discretion, such as the self-imposed duty of the Director of Health to test and approve calibration solutions.

To require the personal approval of the Director of Health for issuance of an ODH calibration solution certificate of approval would also be inappropriate for a very practical reason. There is little point in forcing the Director of Health to personally adopt or reject a decision to certify a calibration solution given the director's lack of expertise in this particular area of science. ODH certification of calibration solutions is at heart a matter of chromatographic testing; such testing is an area of expertise of ODH employees other than the Director of Health; and the testing is not an area requiring an exercise of judgment and discretion by the director. We fail to understand the protestations of both appellee and the trial court that, although the Director of Health need not personally perform the scientific analysis, the director must personally ratify the approval despite an admitted lack of scientific training to do so in any meaningful way.

Like the defendant in *Workman*, appellee had a right to challenge ODH's approval of batch 95080 on the ground that such approval constituted an abuse of discretion, but appellee's argument that the director did not approve batch 95080 is groundless. In *State v. Brockway* (1981), 2 Ohio App.3d 227, 2 OBR 247, 441 N.E.2d 602, the Athens County Municipal Court granted a motion to suppress evidence of the results of a breath test performed by an Intoxilyzer Model 4011 on the ground that the Intoxilyzer is scientifically unreliable. The court of appeals reversed on the ground that the municipal court had substituted its judgment regarding the reliability of breath testing instruments for that of the General Assembly:

"[T]he court below failed to give recognition to the necessary legislative determination that breath tests, properly conducted, are reliable irrespective that not all experts wholly agree and that the common law foundational evidence has, for admissibility, been replaced by statute and rule; and that the legislative delegation was to the Director of Health, not the court, the discretionary authority for adoption of appropriate tests and procedures, including breath test devices." *Id.* at 232, 2 OBR at 253, 441 N.E.2d at 608.

The court acknowledged that it was possible for the director to abuse this discretion, but the court stated that the record did not reflect any such abuse. In *Brockway*, the issue was one of science: the reliability of breath-testing instruments. In this case, the issue is one of administrative bureaucracy: the

delegation of the self-imposed duty to approve calibration solutions. In both cases, however, the trial court substituted its judgment for that of another branch of government. In *Brockway,* the trial court substituted its judgment regarding the reliability of breath-testing instruments for that of the General Assembly; similarly, in this case, the Franklin County Municipal Court, without any evidence specific to batch 95080 before it, substituted its judgment regarding bureaucratic approval procedures for that of ODH.

ODH's interpretation of "approved by the Director of Health" in Ohio Adm. Code 3701–53–04(A) is reasonable. Moreover, even if the self-imposed duty to approve calibration solutions under Ohio Adm.Code 3701–53–04(A) had instead been imposed by the General Assembly, the Director of Health would have had the implied authority to subdelegate the task of testing and approving calibration solutions to an ODH employee. The trial court abused its discretion by holding that the Director of Health's delegation of the duty to approve calibration solutions was improper.

The trial court found a second reason for suppressing the results of appellee's breath test. The court ruled that the certificate of approval for batch 95080 would be inadmissible at trial because it could not have been authenticated and because it would have been inadmissible hearsay. The trial court abused its discretion to the extent it based its decision on these conclusions, because the issue of the admissibility of the certificate of approval was not before the court.

■ The only issue before the trial court was whether ODH's customary practice of delegating to a designated ODH employee the authority to approve calibration solutions was a permissible means of effecting the approval of the Director of Health as required by Ohio Adm.Code 3701–53–04(A). Even assuming that a hearing on a motion to suppress might be a proper forum in which to raise a motion *in limine* regarding the admissibility of a certificate of approval under the rules of evidence, that issue was not before the court. Appellee did not even assert that the certificate of approval for batch 95080 would be inadmissible at trial. The trial court's pretrial order stated that "this case shall be submitted to the Court for a ruling regarding the admissibility of the test base[d] on the calibration procedure issue which is pending [in] * * * *Workman.*" Neither of appellee's memoranda in support of his motion to suppress raises any issues under the rules of evidence. Because appellee raised no issue specific to batch 95080, the parties stipulated to the evidence, which consisted only of the partial *Workman* transcript. Although a certificate of approval may have been useful as demonstrative evidence during a hearing on appellee's motion to suppress, there was no need for the admission of the certificate of approval for batch 95080 as evidence at the motion hearing. Therefore, the trial court erred to the extent it

based its decision on the admissibility of the certificate of approval for batch 95080.

 Had the state been on notice of any issues under the rules of evidence, it may have been able to counter the trial court's arguments. On the issue of authentication, the state may have been able to introduce a certified copy of the ODH certificate of approval.[4] On the issue of hearsay, the trial court held that the certificates of approval issued under ODH's pre–1996 procedure would be admissible, if at all, only pursuant to Evid.R. 803(6) and that all such certificates are unreliable, untrustworthy, and therefore not within the Evid.R. 803(6) hearsay exception: "This court concludes that the calibration certificates prepared by the aforementioned procedures are neither reliable nor trustworthy representations of Dr. Somani's approval." The state, had it been called upon to do so, would have been free to prove the director's approval of batch 95080 through the testimony of any person with personal knowledge of the approval.

The trial court found the rules of evidence applicable by holding that pre–1996 ODH certificates of approval could under no circumstances survive a challenge under the rules of evidence. In this way, the trial court improperly used the rules of evidence as a basis for holding that the Director of Health had not approved batch 95080. The trial court abused its discretion to the extent it *sua*

---

**4.** In any event, the trial court's application of the rules of evidence regarding authentication, by which it determined that the certificate of approval for batch 95080 could never be admitted, was erroneous. The trial court's opinion did not address the question of what constitutes an authenticated copy of a certificate of approval. Instead, the trial court essentially ruled that because of the manner in which ODH's pre–1996 certificates of approval were issued, they are categorically incapable of being authenticated.

Evid.R. 901(A) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The trial court's reasoning was that because ODH's pre–1996 calibration solution certificates of approval bear only a photographic reproduction of the Director of Health's signature and the director did not personally approve any of the calibration solutions, the certificates are not what the state claims they are, that is, the Director of Health's approval of calibration solutions.

The trial court incorrectly applied Evid.R. 901(A). No document is categorically incapable of being authenticated. The authentication inquiry is not whether the document is what its author claimed it to be but, rather, whether the document is what its proponent at trial claims it to be. Thus, a proffered document filled with lies and misrepresentations can be authenticated by testimony that the proffered document is indeed the document filled with lies and misrepresentations that its proponent claims. In this case, the relevant inquiry at trial would be whether the proffered certificate of approval is what the state claims it is, the certificate of approval issued by ODH for batch 95080. Neither the parties nor the trial court has alleged that the certificate of approval for batch 95080 or any other ODH certificate has been forged, altered, or otherwise tampered with. And even had there been such an allegation, the state would have had the opportunity to present a witness with knowledge to testify that the proffered certificate was genuine. Evid.R. 901(B)(1).

*sponte* raised the issue of the admissibility of a document that was neither proffered nor required to be proffered.

The trial court abused its discretion by suppressing the result of appellee's breath test based on (1) a determination that the Director of Health's delegation of the duty to approve calibration solutions was improper, and (2) a finding that the certificate of approval would be inadmissible.

For the foregoing reasons, the assignment of error is sustained, the judgment of the Franklin County Municipal Court is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG, J., concurs.

CLOSE, J., dissents.

CLOSE, Judge, dissenting.

The appendix to this dissent is the trial court's well-written decision. He says it well—I will not repeat it. I would emphasize, however, that the trial court's holding that evidence to be admissible should possess "circumstantial guarantees of trustworthiness tending to assure the truthfulness of the hearsay testimony despite the absence of oath and cross-examination" is the cornerstone of evidence.

Quite simply put, the Director of the Department of Health neither delegated his authority nor performed the required testing himself. There was no properly authenticated calibration solution certificate, and the results of the BAC verifier test cannot, therefore, be admitted. *Columbus v. Robbins* (1989), 61 Ohio App.3d 324, 572 N.E.2d 777.

I would affirm the well-reasoned and thoughtful judgment of the trial court.

## APPENDIX

Decision of Franklin County Municipal Court, Case
No. M9601TFC-102784 Decided Aug. 28, 1996

CHARLES A. SCHNEIDER, Judge.

This cause came before the court on defendant's motion to suppress the BAC Verifier test results based on failure to comply with Ohio Department of Health regulations. By agreement of the parties the transcripts from *State of Ohio v. Workman*, M9505TFC-118505, were used in this case.

The court is persuaded that procedures used by the Director of the Ohio Department of Health to approve calibration solutions violated the Ohio Administrative Code; therefore, the defendant's breath test results should be suppressed.

Ohio Adm. Code 3701-53-04(A) requires "a solution of ethyl alcohol approved by the director of health." In response to a pretrial order of this court, the prosecution determined that the certificate of calibration for the relevant batch solution was prepared using a copy of an original blank certificate. The blank certificate already contained the signature of Dr. Peter Somani, the Director of the Ohio Department of Health. Dr. Somani signed just one blank master certificate, and the department used the photocopied certificates bearing his signature to represent the director's approval of the calibration solutions.

The integrity of the breathalyzer tests is dependant upon compliance with the mandates of the Ohio Department of Health. In a practical sense, a test result above legal limit is sufficient to convict a defendant under R.C. 4511.19. A conviction under R.C. 4511.19 will necessarily result, by law, in a period of incarceration. To determine that the defendant violated R.C. 4511.19, the trier of fact need only find that the defendant's chemical test reading was at the prescribed level and that the defendant was operating a motor vehicle in the state of Ohio. *Newark v. Lucas* (1988), 40 Ohio St.3d 100, 103, 532 N.E.2d 130, 133. Therefore, the accuracy of the BAC Verifier test results is a critical issue, especially in light of the mandatory incarceration, in determining a defendant's guilt or innocence. *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32, 34. This court concludes that director's approval practices have tainted the defendant's BAC Verifer test results and the calibration solution relevant to defendant has not been approved in substantial compliance with Department of Health regulations.

Certificates of approval of the calibration solutions are admissible at trial pursuant to Evid.R. 803(6) as an exception to the rule against hearsay evidence. However, the rule allowing for the introduction of records of regularly conducted activity does not apply if the "source of information or the method or circumstances or preparation indicate a lack of trustworthiness." Evid.R. 803(6). The decision to admit a business record into evidence pursuant Evid.R. 803(6) rests within the sound discretion of the trial court. Evid.R. 104; *State v. Heinish* (1990), 50 Ohio St.3d 231, 239–240, 553 N.E.2d 1026, 1035–1036. The Staff Notes to Evid.R. 803(6) state that evidence intended to be admissible under the business records exception should possess "circumstantial guarantees of trustworthiness tending to assure the truthfulness of the hearsay testimony despite the absence of oath and cross examination." *State v. Patton* (Mar. 5, 1992), Allen App. No. 1-91-12, unreported, 1992 WL 42806. This court concludes that the calibration

certificates prepared by the aforementioned procedures are neither reliable nor trustworthy representations of Dr. Somani's approval.

This court's conclusion does not attempt to require Dr. Somani to conduct tests of the solutions and fill out each blank in the approval form himself. "[S]ubdelegation of authority, impliedly or expressly exists, and must exist to some degree." *Bell v. Bd. of Trustees* (1973), 34 Ohio St.2d 70, 74, 63 O.O.2d 115, 117, 296 N.E.2d 276, 278. However, "the real issue for decision is at what point delegation must stop and the [public administrator] must act." *Id.* The power of the Director of Health to delegate aspects of the approval process implied from practical necessity of the circumstances, but the manner in which the director has delegated these tasks is unacceptable to this court. However, the director has only two choices: either establish a procedure and delegate the authority or perform the certification himself. If the authority is delegated the procedure established as part of the delegation must be followed.

In *Bell*, the Ohio Supreme Court held that the board of trustees of the county hospital properly delegated authority to hearing examiners. The hospital board established specific guidelines and procedures to be followed ny the hearing examiners as they performed the delegated tasks and also "retained the power to adopt or reject, in whole or in part, the findings of the hearing officers and made the final decision on termination of employment." *Id.* at 76, 63 O.O.2d at 119, 296 N.E.2d at 279. The director of the Department of Health has testified that he did not adopt procedures for the delegated tasks, nor was he aware of the procedures used to certify the calibration solutions at the department. (Partial Transcript, *State of Ohio v. Workman*, M9505TFC-118505, at 22.) Simply stating that responsibility was delegated to Dr. Halpin with nothing more does not constitute proper delegation. It does not include the specific guidelines and procedures referred to in *Bell*. Even if it was a proper delegation, there is no evidence that Dr. Halpin conducted the certification. In other words the certification process, even assuming one was established, was never followed.

Furthermore, the procedures used to prepare the relevant certificates do not indicate who performed the laboratory tests, or who completed the blanks in the approval form. Such questions would be inconsequential if and only if Dr. Somani signed and actually approved the solution *after* the laboratory tests were performed and *after* the approval form blanks were completed. In fact, the certificate of batch number 94080 contains only the signature of Dr. Peter Somani, who did not review the certificates after the data was generated in laboratory tests. These practices are clearly distinguishable from the delegation procedures implemented by the board of directors in *Bell* because Dr. Somani has

not retained the power to adopt or reject the certification of a calibration solution and thereby make the final decision. The court finds the director's method of approving the calibration solutions amounts to an evasion of a duty mandated by Ohio Adm.Code 3701-53-04.

Furthermore, to authenticate a certificate of calibration, the state is required to "support a finding that the evidence in question is what its proponent claims." Evid.R. 901(A). The relevant certificate is titled "Approval of Calibration Solution" and indicates that it is prepared pursuant to Ohio Adm.Code 3701-53-04, which requires the approval of the Director of the Department of Health. The director played no part in the approval process. The practice of signing a master certificate in blank and allowing an unknown employee of the department to perform the calibration tests and fill out the certificate cannot be considered an approval.

In *Columbus v. Robbins* (1989), 61 Ohio App.3d 324, 572 N.E.2d 777, the Tenth District Court of Appeals held that pursuant to Ohio Adm.Code 3701-53-04, the state is required to produce a certificate of approval of the calibration solution. "Without a properly authenticated calibration solution certificate, the results of the BAC Verifier test cannot be admitted." *Robbins*, 61 Ohio App.3d at 328, 572 N.E.2d at 780. This court will not admit the calibration certificate because it cannot be properly authenticated. Even assuming that the approval form could be properly authenticated, the certificate cannot be considered a reliable report admissible under Evid.R. 803(6). With no certificate of approval of the batch solution, the state has no evidence of calibration pursuant to Department of Health regulations. Therefore, BAC Verifier results must be excluded. *Robbins*, 61 Ohio App.3d at 328, 572 N.E.2d at 779–780.

For the foregoing reasons, defendant's motion to suppress the results of the BAC Verifier test is granted.