OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendant-Appellant, Matthew Lallathin, appeals from the judgment of the Noble County Court of Common Pleas which convicted him of murder with a firearm specification and sentenced him accordingly. Lallathin argues he was not properly bound over to adult court, that the trial court erred in admitting certain evidentiary materials, and that his conviction was not supported by sufficient evidence.
 {¶ 2} We conclude the trial court did not abuse its broad discretion when ordering that Lallathin be bound over to adult court. Evidence in the record supported its findings and those findings complied with the statute governing bind over. Likewise, we conclude any error in introducing the evidentiary materials Lallathin complains of was harmless since he was not materially prejudiced by their introduction into evidence. Finally, we conclude that when the evidence is viewed in the light most favorable to the prosecution, a reasonable fact-finder could conclude the State proved all the essential elements of its case. Lallathin's argument that the State failed to prove he acted purposely is meritless since he defines purpose as motive and the State need not prove motive. Therefore, the judgment of the trial court is affirmed.
 Facts {¶ 3} On September 5, 2001, Lallathin was a fifteen year-old boy who lived with his father. That day, Lallathin was home sick from school. Even though he was not yet sixteen and did not have a license, he took the keys to his grandfather's Ford Bronco in order to go for a drive. He also took with him a semiautomatic pistol which was kept at his father's house. On the way home, Lallathin was driving on a paved road which turned into a dirt road. He hit the dirt portion of the road at approximately sixty miles per hour, lost control of the Bronco, and flipped it on its side. After the Bronco flipped, Lallathin picked the gun up and put it in his pocket.
 {¶ 4} The victim drove by after the accident and stopped to make sure Lallathin was okay and unsuccessfully tried to help Lallathin flip the Bronco back onto its wheels. Next, the victim turned to walk toward his truck to call for help, Lallathin pulled the gun from his pocket and flipped the safety off. After this Lallathin blacked out. When he came to, he was lying on the ground and the gun was back in his pocket. He got up and realized the victim was lying in the road, bleeding. Lallathin ran to him and checked his pulse. He then drug the victim behind the Bronco to get him out of the road. Lallathin took the victim's truck and drove to a nearby store where he called 911. He reported his accident and that a man was dead, possibly shot. The sheriff's department arrived on the scene and Lallathin was subsequently arrested for murder.
 {¶ 5} Because he was a minor, the charges against Lallathin were originally brought in juvenile court. But after a hearing, the juvenile court transferred jurisdiction of the case to the court of common pleas. The Noble County Grand Jury returned an indictment which charged Lallathin with the offense of murder in violation of R.C. 2903.02(A), and a firearm specification in violation of R.C. 2923.12(A). The matter proceeded to a jury trial where Lallathin was found guilty on both the charge of murder and the firearm specification. The trial court entered sentence accordingly. It is from this judgment that Lallathin timely appeals.
 Bind Over {¶ 6} In his first of three assignments of error, Lallathin asserts:
 {¶ 7} "The trial court erred by relinquishing jurisdiction of Matthew J. Lallathin and ordering that he be bound over for trial as an adult."
 {¶ 8} Before discussing the merits, it should be noted the statutory scheme relating to the transfer of cases from juvenile court to the court of common pleas was significantly altered effective January 1, 2002. Although much of the law is the same, the entire framework was reenacted under a new chapter in the Revised Code. Both the act charged and the transfer proceeding in this case were completed before the effective date of the amendment. Thus, we will refer to and use the prior version of the applicable statutes.
 {¶ 9} Lallathin asserts the trial court abused its discretion when it found he was not amenable to care or rehabilitation within a juvenile facility and the safety of the community may require that he be placed under legal restraint, including, if necessary, for the period extending beyond his majority. According to Lallathin, all the testimony at his bind over hearing demonstrated he suffered from Attention Deficit Hyperactivity Disorder (ADHD), that he would be best rehabilitated in the juvenile system, and that this was a "one time" act of violence demonstrating no future danger to the safety of the community. The State argues he would not be rehabilitated sufficiently for his ADHD in the juvenile system, ADHD had nothing to do with his crime and, therefore, treatment for that disorder would not rehabilitate him, and Lallathin had already proven "resistant" to therapy. The State then argues the danger Lallathin poses to the safety of the community requires he be bound over to the adult criminal system.
 {¶ 10} Juvenile courts have exclusive jurisdiction over any case involving a person alleged to be delinquent for having committed, when younger than eighteen years of age, an act which would constitute a felony if committed by an adult. R.C. 2151.23; 2151.26; State v. Wilson
(1995), 73 Ohio St.3d 40, 43. But in certain types of delinquency proceedings, the child which is alleged to be delinquent may be transferred to the court of common pleas for criminal prosecution. Under former R.C. 2151.26(B), bind over is mandatory in certain circumstances, such as when a child is alleged to have committed murder. This case does not fit into any of those circumstances even though Lallathin allegedly committed murder. He was only fifteen at the time of the act charged and had not previously been convicted of a felony offense or been adjudicated a delinquent child. See R.C. 2151.26(B)(1), (3).
 {¶ 11} Even though the juvenile court was not required to bind Lallathin over to the court of common pleas, it still retained the discretion to do so. Goins v. Wellington (Dec. 18, 2001), 7th Dist. Nos. 01 CA 208, 01 CA 210. When determining whether to bind over a particular juvenile, the juvenile court must look to the factors in R.C. 2151.26(C) and keep in mind that the purpose behind the determination is to assess "the probability of rehabilitating the child within the juvenile justice system." State v. Douglas (1985), 20 Ohio St.3d 34, 36. The juvenile court enjoys a wide latitude to retain or relinquish jurisdiction, and its decision will not be reversed absent an abuse of discretion. Statev. Watson (1989), 47 Ohio St.3d 93, 95. An "abuse of discretion" is more than an error of law or of judgment; rather, it implies the trial court's decision is unreasonable, arbitrary or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157. Thus, this court may not substitute its judgment for that of the trial court merely because it would not have made the same choice. State v. Jenkins (1984), 15 Ohio St.3d 164, 222.
 {¶ 12} R.C. 2151.26(C)(1) provides a trial court may bind an alleged delinquent child who has allegedly committed a felony to the court of common pleas if it finds:
 {¶ 13} "(a) The child was fourteen years or older at the time of the act charged.
 {¶ 14} "(b) There is probable cause to believe that the child committed that act charged.
 {¶ 15} "(c) After an investigation, including a mental examination, * * * there are reasonable grounds to believe that both of the following criteria are satisfied:
 {¶ 16} "(i) The child is not amenable to care or rehabilitation * * * in any facility designed for the care, supervision, and rehabilitation of delinquent children.
 {¶ 17} "(ii) The safety of the community may require that the child be placed under legal restraint, including, if necessary, for the period extending beyond the child's majority." (Emphasis added.) R.C.2151.26(C)(1).
 {¶ 18} When making these findings, the juvenile court must keep in mind the following factors:
 {¶ 19} "(a) A victim of the act charged was five years of age or younger * * *
 {¶ 20} "(b) A victim of the act charged sustained physical harm to the victim's person during the commission of or otherwise as a result of the act charged.
 {¶ 21} "(c) The act charged is not a violation of section 2923.12
of the Revised Code, and the child is alleged to have a firearm on or about the child's person or under the child's control while committing the act charged and to have * * * used the firearm to facilitate the commission of the act charged.
 {¶ 22} "(d) The child has a history indicating a failure to be rehabilitated following one or more commitments [for committing a delinquent act].
 {¶ 23} "(e) A victim of the act charged was sixty-five years or older or permanently and totally disabled at the time of the commission of the act charged * * *." R.C. 2151.26(C)(2).
 {¶ 24} Lallathin first argues the juvenile court improperly found he was not amenable to care or rehabilitation in the juvenile justice system. His argument is based upon his assertion he has ADHD and that disorder will not be treated in the adult criminal system. But the evidence in the record supports the trial court's decision that he was not amenable to care or rehabilitation in the juvenile system.
 {¶ 25} During the hearing the juvenile court held to determine whether it would transfer Lallathin to adult court, both the prosecution and the defense had expert witnesses testify concerning their respective mental examinations of Lallathin. Both witnesses testified it was possible or probable that Lallathin suffered from ADHD. More specifically, both experts testified Lallathin suffered from the inattentive type of ADHD, not the hyperactivity type, and his treatment for that disorder began late in his life. Both experts further testified that any treatment for ADHD would best be found in the juvenile system. But neither expert was sure that Lallathin would be successfully treated for ADHD in the juvenile system.
 {¶ 26} Significantly, neither expert explained how the inattentive type of ADHD led to Lallathin's alleged conduct in this case. For instance, Lallathin's expert, Dr. Harding, testified Lallathin's problems were not "related to defiant behavior, appositional behavior, conduct disorders, disruptive type behaviors. * * * I saw no indication that Matthew ever demonstrated or exhibited hyperactivity in school." Instead, he testified that type of disorder would manifest itself as forgetfulness, low self-esteem, and, in some cases, symptoms of depression. "It's usually the type that revolves the inability to focus attention and attention will shift very quickly from one topic to another and they have difficulty with sustaining directive attention based on, especially, instructions coming from another person." As the trial court concluded, these types of characteristics indicate Lallathin may have been less likely to commit such a violent, random offense. Thus, the juvenile justice system's ability to treat Lallthin for ADHD is unrelated to whether Lallathin will be amenable to rehabilitation in the juvenile system for the murder he allegedly committed.
 {¶ 27} Furthermore, the Ohio Supreme Court has held the seriousness of the alleged act is relevant to "the assessment of the probability of rehabilitating the child within the juvenile justice system" as the more serious the offense, the less amenable the juvenile will be to rehabilitation in the juvenile system. State v. Watson
(1989), 47 Ohio St.3d 93, 95; see, also, R.C. 2151.26(C)(2)(b), (c), (d). Here, the alleged act, murder, is one of the most serious acts a juvenile could be charged with committing. And while detained in a juvenile facility pending the transfer hearing, Lallathin refused to participate in programming and had to be confined to his room for four hours as punishment. Finally, the State's expert, Dr. Kohler, testified Lallathin was unable or unwilling to discus his feelings, a fact which would retard his rehabilitation. She opined that it would take one to two years of treatment before Lallathin would "get comfortable enough to express his feelings and talk about his feelings" in order to be fully rehabilitated and that his treatment would take longer than the average person.
 {¶ 28} Based on these facts, it does not appear that the trial court abused its discretion when it concluded that Lallathin was not amenable to care or rehabilitation in a juvenile facility. Lallathin may suffer from ADHD, but it is unclear how this affected him in the commission of the act charged. He has demonstrated some reticence toward rehabilitation. An expert testified it would take longer than normal for him to be rehabilitated. Finally, he committed murder, a serious offense which normally takes longer periods of rehabilitation. Thus, his argument that the trial court erred in making this finding is meritless.
 {¶ 29} Lallathin also contends the trial court erred when it found the safety of the community may require he be placed in legal restraint, even after he reached the age of majority. He argues he has no significant history of violence and the facts demonstrate this was a "one time" act of violence. But each expert testified the results of Lallathin's mental examination showed he had an increased risk for future violence. He scored very high in a test suggesting aggressive, antisocial behavior. He scored in a "moderate to high risk" category on another test and those who scored in that range demonstrate a risk of violence thirteen times more than the general public. He was using drugs and alcohol which "would increase his risk of violence." Lallathin did attack the credibility of some of these findings during direct and cross-examinations of the various expert witnesses. But there clearly are facts supporting the trial court's decision. Thus, this argument is also meritless.
 {¶ 30} In this case, there is no question Lallathin falls within the first two requirements dealing with discretionary transfer. He challenges the trial court's findings regarding R.C. 2151.26(C)(1)(c). But there was evidence on the record supporting the trial court's findings. In addition, we emphasize the broad discretion the juvenile court has when determining whether a particular juvenile should be bound over for a particular offense. Thus, we may only overturn its decision if that decision is unreasonable, unconscionable, or arbitrary. Since the juvenile court's decision was based on evidence in the record that supported its findings, we cannot say it abused its discretion in ordering that Lallathin be bound over to the court of common pleas. Lallathin's first assignment of error is meritless.
 Evidentiary Issues {¶ 31} In his second assignment of error, Lallathin asserts:
 {¶ 32} "The trial court erred when it admitted over objections State's Exhibits 26, 29 and 32."
 {¶ 33} Lallathin challenges the admissibility of three evidentiary materials: a blood sample purportedly from the victim; a bag of clothing Lallathin was purportedly wearing at the scene of the murder; and, a DNA report analyzing the blood sample and clothing. According to Lallathin, the State failed to prove the first, "most crucial" link in the chain of evidence for these exhibits by not having testimony proving the blood sample was actually that taken from the victim and the clothes were those actually taken from Lallathin. Thus, he argues these exhibits and the DNA report arising from these exhibits are inadmissible because of the lack of authentication.
 {¶ 34} Pursuant to Evid.R. 901, an exhibit may not be admitted into evidence until it is properly authenticated "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). Authentication is a form of relevancy conditioned on a preliminary determination of fact. State v. Brown, 7th Dist. No. 01 CA 120, 2002-Ohio-5207, ¶ 32. Its purpose is to connect the particular piece of evidence sought to be introduced to the facts in the case by giving some indication the evidence is relevant and reliable. Id. at ¶ 35. In achieving that purpose, it lays the foundation for admissibility of particular evidence. Id. at ¶ 32; Staff Note to Evid.R. 901(A); 43 Ohio Jurisprudence 3d (1983), Evidence and Witnesses, Section 456. In order for a party to properly authenticate an exhibit, that party must only make a prima facie showing, to the court, that the exhibit is what its proponent at trial claims it to be.State v. Cooper (1997), 120 Ohio App.3d 284, 298; State ex rel.Montgomery v. Villa (1995), 101 Ohio App.3d 478, 484-485.
 {¶ 35} Lallathin objects to the introduction of the clothing and the blood sample into evidence because they were not identified by the testimony of a witness with knowledge. Thus he argues the State failed to establish the "vital first step" in the chain of custody. He then argues the DNA report was inadmissible because the items it relied upon, the clothing and blood sample, were inadmissible.
 {¶ 36} In Ohio, a trial court enjoys broad discretion regarding the admissibility of evidence and, unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb its decision. State v. Issa (2001),93 Ohio St.3d 49, 64. As stated above, an "abuse of discretion" is more than an error of law or of judgment; rather, it implies the trial court's decision is unreasonable, arbitrary or unconscionable. Adams at 157.
 {¶ 37} Given the evidence in this case, it does not matter whether or not Lallathin's argument concerning the admissibility of that evidence has merit because he was not materially prejudiced by its introduction into evidence. This evidence did nothing more than prove the blood on Lallathin's clothing was the victim's blood. But Lallathin admitted he had the gun in his hand, blacked out, and woke up with the victim dead in front of him. He then admitted he drug the bloody victim approximately thirty feet until he was behind the back bumper of Lallathin's overturned truck. It is surely a reasonable inference to conclude Lallathin might have had some of the man's blood on his clothing. Given Lallathin's admissions in his two audio-taped statements to the police, the introduction of this evidence was surplusage, i.e. it did not prove anything which needed to be proved. Any error in the introduction of this evidence would be harmless error. See, e.g. State v. Adams (1995),106 Ohio App.3d 139, 144. Accordingly, this assignment of error is meritless.
 Sufficiency of the Evidence {¶ 38} In his third assignment of error, Lallathin asserts:
 {¶ 39} "The jury's verdict was not supported by sufficient evidence."
 {¶ 40} Although Lallathin argues his conviction was not supported by sufficient evidence, much of his argument sounds like a manifest weight argument rather than a sufficiency argument. "Sufficiency of the evidence" is "`a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'"State v. Thompkins (1997), 78 Ohio St.3d 380, 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433. The relevant inquiry when determining whether the evidence is sufficient to support the verdict "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." Id. at 273. Whether the evidence is legally sufficient is a question of law.Thompkins at 386.
 {¶ 41} The Ohio Supreme Court has endeavored to ensure that the "sufficiency of the evidence" will not be confused with the "manifest weight of the evidence". See Id. at paragraph two of the syllabus ("The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."). The weight of the evidence concerns the inclination of the greater amount of evidence. Id. at 387. Accordingly, an appellate court may determine a judgment of a trial court is sustained by sufficient evidence, but that its judgment is against the weight of the evidence. Id. Although Lallathin's argument sounds like a manifest weight argument, his assignment of error is that the verdict is not supported by sufficient evidence. Accordingly, we will address his argument as a sufficiency argument rather than a manifest weight argument.
 {¶ 42} Lallathin was convicted of murder in violation of R.C.2903.02. That statute prohibits anyone from "purposely" causing the death of another. Lallathin argues the State failed to demonstrate that he purposely caused the death of another because it failed to show Lallathin has a reason to cause the death of the victim. Thus, he contends the State failed to prove an essential element of the offense.
 {¶ 43} Lallathin's argument fails because it demonstrates a misunderstanding of what the statute means when it prohibits any person from purposely causing the death of another. "Motive" is something, such as a willful desire, which leads one to act in a certain fashion. Black's Law Dictionary (7th Ed. 1999), 1034. Thus, when Lallathin's argument refers to "purpose", it is really referring to "motive". Although proof of motive is always relevant in a criminal case as it relates to the mental state of a defendant, it is not an essential element of the crime with which the defendant is charged. State v. Findley (1973),39 Ohio App.2d 166, 175-76, 68 O.O.2d 357, 317 N.E.2d 219. Accordingly, motive is not an essential element of murder. State v. Stewart (1991),75 Ohio App.3d 141, 156.
 {¶ 44} The legislature has provided an explanation of what it means when it states a crime must be committed with purpose.
 {¶ 45} "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).
 {¶ 46} "Because the intent of an accused dwells in his or her mind and can never be proved by the direct testimony of a third person, it must be gathered from the surrounding facts and circumstances. * * * `Such an intent may be inferred in a felony-murder when the offense and the manner of its commission would be likely to produce death.'" Statev. Treesh (2001), 90 Ohio St.3d 460, 484-485, quoting State v. Garner
(1995), 74 Ohio St.3d 49, 60.
 {¶ 47} In this case, there were no eyewitnesses to the shooting. Thus, the only evidence providing the circumstances surrounding the shooting are Lallathin's two tape-recorded statements. In those statements, Lallathin repeatedly stated he remembered taking the gun out of his pocket and flipping the safety off. He then claims he blacked out and does not remember shooting the victim. The next thing he remembered was getting up off the ground and seeing the victim lying in the middle of the road, dead and bleeding. At that time, the gun was back in his pocket with the safety off.
 {¶ 48} Dr. Michael Harding, a clinical psychologist, testified in Lallathin's defense. He stated Lallathin's blackout could be the result of dissociative amnesia which causes someone to forget stressful events. On cross-examination, he admitted that if Lallathin did shoot the victim that might be an event stressful enough to cause the amnesia. The doctor also admitted Lallathin could be malingering.
 {¶ 49} Given these circumstances, there was sufficient evidence to support a conclusion that Lallathin specifically intended to cause the death of the victim. He took a gun out of his pocket, turned off the safety, and the next thing he knew, the victim is lying dead in front of him. When viewed in the light most favorable to the prosecution, this evidence shows Lallathin purposely caused the death of the victim. Accordingly, this assignment of error is meritless.
 {¶ 50} As each of Lallathin's assignments of error are meritless, the judgment of the trial court is affirmed.
Judgment affirmed.
Donofrio and Vukovich, JJ., concur.